271 A.2d 814.

GERARD JOSEPH SALVAIL *vs.* JOHN F. SHARKEY, *Acting Warden.*

DECEMBER 30, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.   On February 18, 1970, the Governor of the State of Florida issued his warrant alleging that "Gerald Joseph Salvail" had been charged with the crime of breaking and entering an apartment dwelling in the City of Hialeah on August 9, 1969 and that he had fled Florida and taken refuge in Rhode Island.   Accompanying the demand was a copy of a criminal information issued by the State's Attorney for the Eleventh Judicial Circuit of Florida.   The information described the accused as "Gerard Joseph Salvail."   The warrant requested that the fugitive be apprehended and be delivered to a named deputy sheriff from the State of Florida.   Thereafter, on March 9, 1970, the Governor of the State of Rhode Island, acting in pursuance to the requirements of the Uniform Criminal Extradition Act, issued his rendition warrant ordering Rhode Island authorities to arrest "Gerald Joseph Salvail" and deliver him to the Florida sheriff.

The petitioner was apprehended on a fugitive from justice warrant and brought before a justice of the Sixth Division of the District Court.   He was advised of his right to file a writ of habeas corpus whereby he could test the legality of his arrest and extradition to Florida.   A habeas petition was filed in the Superior Court.   In the Superior Court petitioner's challenge was limited to the sufficiency of the information and its accompanying affidavit.   His petition was denied but he was afforded an opportunity to file a new petition in this court.   This he did.

In this court petitioner not only renewed the argument made in the Superior Court but now he also contends that there is no proof that he is the person named in either the Florida requisition warrant or the Rhode Island rendition warrant.   He points out that both warrants seek the apprehension in Rhode Island and the return to Florida of "Gerald" Joseph Salvail while he is "Gerard" Joseph Salvail.

▬▬ The petitioner may be returned by Rhode Island to the Florida authorities only when it is shown that he is (1) the individual named in the extradition rendition; (2) charged with a crime in the demanding state and that he is (3) a fugitive, which is to say that he was in Florida when the alleged crime was committed. *Hyatt* v. *Corkran,* 188 U. S. 691, 23 S.Ct. 456, 47 L.Ed. 657; *Woods* v. *Cronvich,* 396 F.2d 142 (5th Cir. 1968); *United States ex rel. Tucker* v. *Donovan,* 321 F.2d 114 (2d Cir. 1963) *cert. denied, sub nom. Tucker* v. *Kross,* 375 U. S. 977, 84 S.Ct. 496, 11 L.Ed.2d 421; *In re Dean,* Del. Supr., 254 A.2d 242. The petitioner concedes that, as a general rule, when a governor of an asylum state issues a rendition warrant, regular on its face, it is prima facie evidence of every jurisdictional fact which the chief executive is obligated to determine before he issues his warrant. *Brown* v. *Sharkey,* 106 R. I. 714, 263 A.2d 104.

In most jurisdictions it is the rule that where there is an identity between the name of the accused and the person named in the extradition documents, a prima facie showing has been made that the accused is indeed the individual named in the extradition rendition and that unless overcome by the accused's evidence showing a lack of identity, this prima facie showing is sufficient to establish the identity of the accused. *Hithe* v. *Nelson,* 172 Colo. 179, 471 P.2d 596; *Ex parte Freeman,* 80 Ariz. 21, 291 P.2d 795; *People* v. *Lynch,* 16 Ill.2d 380, 158 N.E.2d 60; see also 93 A.L.R.2d §11 at 930.

▬▬ Here, there has been no showing that the accused's name is identical with that of the person named in the Florida or Rhode Island warrants. This being the case, we cannot indulge in the presumption that the Governor has complied with the necessary legal prerequisites before he issued his warrant. *Poulin* v. *Bonenfant,* Me., 251 A.2d 436. When there exists such a variance in names as

appears in this proceeding, it then becomes respondent's burden to establish by credible evidence that petitioner, "Gerard," is the "Gerald" being sought by the Florida authorities. *People* v. *Meyering,* 358 Ill. 589, 193 N. E. 495; *State* v. *Allen,* 83 Fla. 655, 92 So. 155; *Ex parte Freeman, supra.* See also *Baker, Petitioner,* 310 Mass. 724, 39 N.E.2d 762.

We shall return to the issue of petitioner's identity after we have considered his remaining contention.

He contends that the documents accompanying the Florida requisition warrant are defective because they fail to contain facts tending to show that he committed a crime in Florida. In taking this position, petitioner relies on the holding in *Kirkland* v. *Preston,* 385 F.2d 670 (D.C. Cir. 1967), which states that an affidavit charging the accused with committing a crime in the demanding state must set forth facts which would justify a fourth amendment finding that there is probable cause for his arrest. The court in *Kirkland* faulted the conclusionary language contained in the affidavit. We think *Kirkland* can be differentiated from the case at bar.

In *Kirkland* the extradition was being effectuated under a federal statute, 18 U.S.C.A. §§3181-3195. Under that statute, the demanding state must furnish the asylum state with "* * * a copy of an indictment found or an affidavit made before a magistrate of any State * * * charging the person demanded with having committed treason, felony, or other crime * * *." 18 U.S.C.A. §3182 at 127. Here, however, we are concerned with a rendition warrant issued pursuant to the provisions of the Uniform Criminal Extradition Act, G. L. 1956 (1969 Reenactment) chap. 9 of title 12. Section 12-9-4 specifies that a demand for extradition may be accompanied by either a copy of an indictment, or an information supported by an affidavit made in the demanding state or an affidavit made before

a judge in that state. It is readily apparent that, unlike the federal law, the Uniform Act recognizes the use of informations and affords an option not available under the federal law. Section 12-9-4 goes on to say that the indictment, information or affidavit must substantially charge the person with having committed a crime.

In *Kirkland* the court in scrutinizing the affidavit observed that an indictment embodies a grand jury's judgment that constitutional probable cause exists. We believe that a somewhat similar observation can be made about an information. While the criminal law procedures of this state do not provide for the use of an information, this is in and of itself no reason to downgrade their use by a sister state.

We can see little difference between an indictment and an information. An indictment is a sworn accusation of crime against one or more persons made by a group of people called a grand jury. An information is a written accusation made by a public prosecutor, without the intervention of a grand jury. 4 Wharton, *Criminal Law & Procedure*, §1723. Both serve to inform the accused of the nature of the charge preferred against him so that he might prepare his defense. They also stand as a shield against the threat of double jeopardy once he has been acquitted or convicted on the charge specified therein. *Schook* v. *United States*, 337 F.2d 563 (8th Cir. 1964). The use of an information has been held to be a constitutionally permissible procedure by which a state can charge a person with having committed a crime. *Lem Woon* v. *Oregon*, 229 U. S. 586, 33 S.Ct. 783, 57 L.Ed. 1340. We presume that a public prosecutor, like any other public official, will be true to the duties of his office. We have every right to expect that he, like the grand jury, will exercise his powers in accordance with the law. We will therefore afford the same degree of sanctity to the issu-

ance of an information as we do to the return of an indictment.

Extradition is but one step in the securing of the arrest and detention of an accused. *Fisco* v. *Clark,* 243 Ore. 466, 414 P.2d 331. The issue in an extradition proceeding is whether the demanding papers "substantially charge" the petitioner with crime, not whether they meet the legal technicalities of criminal pleadings. *Smith* v. *Idaho,* 373 F.2d 149 (9th Cir. 1967). Rather than look at the information and affidavit as if we were considering a motion to quash a complaint, we shall follow the lead of the court in *State* v. *Telander,* 282 Minn. 209, 163 N.W.2d 858, and examine these documents to assure ourselves that there is a reasonable basis for the claim that the alleged fugitive has committed a crime in the demanding state.

We have examined the disputed documents. The information filed by the State's Attorney is under oath. It states that "Gerard" did break and enter into the dwelling of Tyra Bellman. The affidavit was executed by a Hialeah police officer before a judge of the criminal court for Dade County, Florida. In it the officer swears that he and several other officers apprehended "Gerald Joseph Salvail" on August 9, 1969 and charged him with the break of the Bellman dwelling. We are satisfied that the Florida charge is not unfounded.

We now return to the question of whether "Gerard" is "Gerald." While we are mindful of our duty to protect the rights and privileges of petitioner, we are equally conscious of the constitutional mandate calling for a "prompt return" of a fugitive as soon as the state from which he fled demands him. *Sweeney* v. *Woodall,* 344 U. S. 86, 73 S.Ct. 139, 97 L.Ed. 114. The issue of the misnomer was not raised in the Superior Court.[1] It was raised

---

[1]The habeas hearing in this court is a de novo proceeding. It is not an appellate review of the Superior Court's action.

70

here only because of the perspicacious eye of petitioner's appellate counsel. Justice dictates that we afford respondent a reasonable time to contact the Florida officers and submit some proof sufficient to determine the identity of "Gerald Joseph Salvail."

After oral argument, respondent moved to supplement the record by filing with us an affidavit and other documents prepared and furnished by officials of the demanding state. The affidavit is that of an assistant state attorney. The documents consist of a bail bond signed by a Gerard Joseph Salvail and a fingerprint card taken by the Sheriff of Dade County listing the person whose prints appear thereon as Gerard Joseph Salvail. Interstate rendition proceedings are summary in nature and the accused is not entitled to the procedural protections afforded a defendant in a criminal trial. Accordingly, the strict rules of evidence are not applicable to this cause. *United States* v. *Flood*, 374 F.2d 554 (2d Cir. 1967); *Notter* v. *Beasley*, 240 Ind. 631, 166 N.E.2d 643; 1 Wigmore, *Evidence* (3d ed.) §4(6) at 24. The petitioner's objection to respondent's motion is overruled and affidavits and other documents will be considered as competent evidence to establish the requisite identity.

The assistant state attorney's affidavit states that Gerard Joseph Salvail is the person wanted in Florida on the breaking and entering charge and that whenever the name "Gerald" appears in the extradition papers, it is a typographical error as it should be "Gerard." It is also clear that on August 9, 1969, a Gerard Joseph Salvail posted a bail bond to insure his appearance before the criminal court in Dade County. The fingerprint card lists Gerard's birthplace as Warwick, Rhode Island and his birthday as July 9, 1947. Attached to the petitioner's brief is a copy of his birth certificate. It shows his birthplace as West Warwick and his birthday as July 9, 1947. The variance

between Florida's Warwick and Gerard's West Warwick is understandable. The similarity of birthdays is, however, convincing. We therefore believe that the respondent has sustained his burden in showing that the petitioner is the individual who is wanted as a fugitive from Florida.

The petition for habeas corpus is denied and dismissed.

*Kirshenbaum & Kirshenbaum, Alfred Factor,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for respondent.