## Commonwealth ex rel. Marshall, Appellant, *v.* Gedney.

Submitted December 2, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Leonard Sosnov* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*Michael F. Henry, James A. Shellenberger,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for appellee.

OPINION BY PRICE, J., December 1, 1975:

The question presented in this appeal is quite narrow and may be simply stated. In an extradition proceeding, must the demanding state demonstrate sufficient probable cause to arrest relator before extradition will be granted? The lower court determined that the asylum state could not insist on a showing of probable cause. We are convinced that the determination of probable cause is not the province of the asylum state and we will, therefore, affirm the order of the lower court.

The history of the case indicates that relator was initially arrested on September 6, 1973, by Philadelphia Police Detectives and charged with being a fugitive from the State of Kansas. Relator immediately filed a petition for a writ of habeas corpus and was released from custody because the Commonwealth was unable to produce evidence required by Section 15 of the Uniform Criminal Extradition Act (Act).[1]

The fugitive charge remained, however, and relator was again arrested on a Pennsylvania Governor's Warrant on November 5, 1973. A petition for a writ of habeas corpus was again filed and an extradition hearing was scheduled for November 27, 1973. Relator contended that the Pennsylvania Governor's Warrant was legally insuf-

---

1. Act of July 8, 1941, P.L. 288, §15 (19 P.S. §191.15).

ficient because the papers from Kansas supporting it failed to show probable cause and because the papers did not comply with Section 3 of the Act.[2] The trial judge heard testimony and decided these contentions against relator.

Relator then appealed the denial of the habeas corpus petition to this court and to the state supreme court. On January 28, 1974, the supreme court granted the petition for supersedeas, and relator discontinued her appeal in this court pending the outcome of the appeal in the supreme court. On July 1, 1974, the supreme court transferred the case to this court holding that, "in all extradition cases appeals from the grant or denial of a writ of habeas corpus must be taken to the Superior Court." *Commonwealth ex rel. Marshall v. Gedney*, 456 Pa. 570, 574, 321 A.2d 641, 643 (1974). In this appeal, relator raises only the probable cause issue.

Section 3 of the Act[3] sets forth the requirements which must be met before extradition will be granted.

> "No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing, alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has

---

2. Act of July 8, 1941, P.L. 288, §3 (19 P.S. §191.3).

3. *Id.*

broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state, and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand."

In other words, extradition will be granted if (1) the subject of the extradition is charged with a crime in the demanding state, (2) the subject of the extradition is a fugitive from the demanding state, (3) the subject of the extradition was present in the demanding state at the time of the commission of the crime, and (4) the requisition papers are in order. *Commonwealth ex rel. McGowan v. Aytch,* 233 Pa. Superior Ct. 66, 334 A.2d 750 (1975).

We have consistently held that the relator does have the unqualified right to require proof that he is the person named in the extradition papers. *Commonwealth ex rel. Coades v. Gable,* 437 Pa. 553, 264 A.2d 716 (1970). However, our courts have refused to examine other alleged defects in the extradition, *Commonwealth ex rel. Raucci v. Price,* 409 Pa. 90, 185 A.2d 523 (1962) (technical sufficiency of the indictment will not be inquired into); *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa. Superior Ct. 527, 323 A.2d 359 (1974) (procedural errors in the asylum state will not be inquired into), or to examine questions concerning actual guilt or innocence. *Commonwealth ex rel. Coades v. Gable, supra.*

In the instant case, the extradition papers include the following: a governor's extradition warrant signed by the Governor of Kansas addressed to the Governor of Pennsylvania; an "Application for Requisition" sworn to by Nick Tomasic, District Attorney for Wyandotte County, Kansas, before Judge Tudor NELLOR of the Kansas Magistrate Court; a warrant for relator's arrest issued by Judge NELLOR; a complaint sworn to by Mr. Tomasic

before the Clerk of the Magistrate Court; and various other affidavits sworn to before a notary public identifying the above officials and stating that they believe relator committed the crime of murder in Kansas. Relator does not contest that these papers are sufficient to satisfy the mandates of the statute, nor is there any question that she is the subject of the extradition and was in the demanding state at the time of the commission of the crime. Rather, relator contends that there must be a showing, prior to the extradition, of the existence of probable cause in the demanding state.

There is no doubt that the statute contains no requirement that a showing of probable cause be made before extradition will be allowed. *Commonwealth ex rel. Ebbole v. Robinson*, 223 Pa. Superior Ct. 119, 299 A.2d 47 (1972). Therefore, if we were to agree with relator's position, we would have to conclude that there is a constitutional requirement that probable cause for the arrest in the demanding state be shown at the extradition hearing in the asylum state.

The question of whether the existence of probable cause to arrest in the demanding state need be shown in the asylum state before extradition will be granted is by no means novel, but has been considered by other courts of this nation.[4] Those courts which have held that there is no need to demonstrate probable cause before the extradition will be granted have usually done so on the theory that extradition statutes, as well as Article 4,

---

4. *In re Ierardi*, 321 N.E.2d 921 (Mass. 1975); *State v. Hughes*, 68 Wis.2d 662, 229 N.W.2d 655 (1975); *People v. Lauderdale*, 16 Ill.App.3d 916, 306 N.E.2d 913 (1974); *Salvail v. Sharkey*, 108 R.I. 63, 271 A.2d 814 (1970); *McEwen v. State*, 224 So.2d 206 (Miss. 1969); *Smith v. State*, 89 Idaho 70, 403 P.2d 221 (1965). *Contra, Kirkland v. Preston*, 385 F.2d 670 (D.C. Cir. 1967); *Pippin v. Leach*, 534 P.2d 1193 (Colo. 1975); *Brode v. Power*, 31 Conn. Supp. 411, 332 A.2d 376 (1974); *Tucker v. Commonwealth of Virginia*, 308 A.2d 783 (D.C. Ct. App. 1973); *State ex rel. Foster v. Uttech*, 31 Wis. 2d 664, 143 N.W.2d 500 (1966).

Section 2, Clause 2 of the Constitution of the United States, have as their purpose expeditious and summary executive procedures for returning fugitives to the demanding state. We agree.

The leading case contra is *Kirkland v. Preston,* 385 F.2d 670 (D.C. Cir. 1967). In that case and in those other jurisdictions requiring that probable cause be demonstrated in the asylum state before extradition be granted, the reasoning generally adopted is based on an interpretation of the implementing statute in light of the fourth and fourteenth amendments. Such interpretation thus, in effect, adds the requirement of showing probable cause before the asylum state may order the extradition. Those decisions, however, are not binding upon us and we specifically reject their reasoning.

There is no attempt here to abridge the rights of the relator. Allowing extradition after the statutory requirements are met will not in any manner deny relator her right to a fair and impartial determination of her case. Relator will have every opportunity to assert her rights under the fourth and fourteenth amendments in the demanding state. The requirements already incorporated in the statute supply an effective guarantee against the extradition of an incorrect party. The offense, the evidence, the witnesses, and the defense all lie in the demanding state, and the courts there should decide all aspects of the case, including all questions of probable cause.

Our courts have held that allegations contained in the requisition for extradition and the accompanying affidavits must be accepted as prima facie true, *Commonwealth ex rel. Reis v. Aytch,* 225 Pa. Superior Ct. 315, 310 A.2d 681 (1973), and that a governor's extradition warrant is prima facie evidence that all legal requirements have been met. *Commonwealth ex rel. Raucci v. Price, supra.* Relator does not question that the papers satisfy the statute, and we must, therefore, accept them as true and valid. That is sufficient to support the grant of extradi-

tion, and we will not incorporate a requirement for the demonstration of probable cause. The order of the lower court granting extradition is affirmed.

————

CONCURRING OPINION BY VAN DER VOORT, J.:

I concur in Judge PRICE's Opinion. Article IV, Section 2 of the Constitution of the United States provides as follows:

". . .

A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

In the implementation of this mandate, the Commonwealth of Pennsylvania has adopted the Uniform Criminal Extradition Act of 1941 (19 P.S. §191.1 et seq.).

The appellant would have us hold that in a proceeding under the Act, the warrant of our Governor issued pursuant to the warrant of the Governor of one of our sister states, which latter warrant is supported by orderly requisition documents and testimony proving that the fugitive named in the warrant is charged with a crime (in this case the crime of murder) in the demanding state, is a fugitive from that state, and was present in that state when the crime was committed, is insufficient to justify the ordering of her return to the demanding state. The appellant would have us engraft an impediment upon extradition proceedings by requiring that, in addition to all these things, the demanding state must show that there was probable cause for the arrest of the fugitive in the demanding state. A requirement that the demanding state must show probable cause for the arrest of the fugitive based upon standards other than the standards of the demanding state, would be embarrassing

to a sister state and put it to needless expenditure of time, effort and money.

The idea that we should not accept the standards of one of our sister states is contrary to harmonious relationships between the states. Such an added requirement is not in keeping with the constitutional mandate for the return of fugitives by the asylum state to the demanding state. Such a requirement would make our state a haven for escaped criminals. It is entirely unnecessary and contrary to the provisions of the Criminal Extradition Act. There is no provision in the United States Constitution or in the Act calling for proof of probable cause in the asylum state. Had the drafters of either document intended to create such a requirement I'm sure they would have expressly said so.

DISSENTING OPINION BY SPAETH, J.:

This case presents a question of first impression in Pennsylvania: When a request for extradition is based on an affidavit sworn to before a magistrate in another state, is there a constitutional requirement that the affidavit set forth probable cause for arrest?[1]

Appellant was arrested in Philadelphia on September 6, 1973, and charged with being a fugitive from Kansas, where she was charged with felonious homicide. A peti-

---

1. There is one decision by the United States Court of Appeals for the Third Circuit that might be read as answering this question: *United States ex rel. Grano v. Anderson*, 446 F.2d 272 (3d Cir. 1971). In a brief *per curiam* opinion, the court did not discuss whether probable cause is necessary, holding instead that in the case before it there was probable cause. However, Judge VAN DUSEN's dissenting opinion states that the court was working on the premise that probable cause is necessary; he disagreed that it was present. Although the courts of this Commonwealth will normally defer to the Third Circuit on federal questions, *see, e.g., Commonwealth v. Negri*, 419 Pa. 117, 213 A.2d 670 (1965), since the extent of that court's decision in *Grano* is not clear, in this case I shall not rely on it alone.

tion for a writ of habeas corpus was filed, and she was released because the Commonwealth was unable to produce evidence required by Section 15 of the Uniform Criminal Extradition Act.[2] Appellant was released from custody, but the fugitive charge remained, and she was rearrested on a Pennsylvania Governor's Warrant on November 5, 1973. She again sought a writ of habeas corpus, and a hearing was scheduled for November 27, 1973.

At the beginning of the hearing the legal sufficiency of the Governor's Warrant and the supporting affidavits was challenged on the grounds that the affidavits did not show probable cause to believe that appellant had committed the crime charged in Kansas, and did not comply with Section 3 of the Uniform Criminal Extradition Act, supra, 19 P.S. §191.3. The court took these objections under advisement until testimony was completed,[3] after which both objections were decided against appellant, and the petition for a writ of habeas corpus was denied.

Appeals were filed both in this court and the Supreme Court. On January 14, 1974, the Supreme Court granted a supersedeas; appellant then discontinued her appeal in this court. On July 1, 1974, the Supreme Court transferred the appeal pending before it to this court, holding that although the charge made in Kansas was felonious homicide, the issue before the Pennsylvania courts was limited to the lawfulness of appellant's extradition, and that "in all extradition cases appeals from the grant or denial of a writ of habeas corpus must be taken to the Superior Court." *Commonwealth ex rel. Marshall v. Gedney*, 456 Pa. 570, 574, 321 A.2d 641, 643 (1974). *See also*

---

2. Act of July 8, 1941, P.L. 288, 19 P.S. §191.1 *et seq.*, §191.15 (Supp. 1974-75). This Act has been adopted in 47 states, including every state from which a decision is cited in this opinion; in each of these states any variations in the Act are not important so far as this case is concerned.

3. The testimony is discussed in part III of this opinion.

*Commonwealth ex rel. Colcough v. Aytch,* 227 Pa. Superior Ct. 527, 323 A.2d 359 (1974).

I

The demand by the Governor of Kansas, in response to which the Pennsylvania Governor's Warrant was issued, was supported by affidavits sworn to before a magistrate in Kansas.[4] Appellant's principal contention is that the Pennsylvania Governor's Warrant was void because the affidavits were insufficient to show that the warrant was issued "upon probable cause," as required by the fourth amendment to the United States Constitution, made applicable to the states by the due process clause of the fourteenth amendment. *Wolf v. Colorado,* 338 U.S. 25 (1949).

Extradition is provided for by article IV, section 2, clause 2 of the Constitution:

> "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

It will be observed that this clause is silent as to the procedures to be followed. That is, it does not say what it means for a person to be "charged," what a "Demand" is or how a person is to be "delivered up" and "removed." The clause has therefore been implemented by a federal statute, 18 U.S.C. §3181 *et seq.,* and by statutes in the various states and District of Columbia, in particular, by the Uniform Criminal Extradition Act, *supra.*

The section of the federal statute on the form that the "Demand" may take reads as follows:

---

4. There is no indictment; under Kansas law, the only kind of case that can be commenced by information is a misdemeanor case. 12 K.S.A. §22-2303 (1973). *See* note 7, *infra.*

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces *a copy of an indictment* found *or an affidavit made before a magistrate* of any State or Territory, charging the person demanded with having committed treason, felony, or any other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear . . ." 18 U.S.C. §3182 (emphasis added).

Thus, when presented with "a copy of an indictment" or with "an affidavit made before a magistrate," it is the duty of the governor of a state to arrest and deliver the fugitive to the agent of the governor of the demanding state. This is a matter of federal law; a state cannot limit this duty.

A state may, however, expand the duty. "While state laws cannot place limitations upon the extradition which is required by federal law, state legislatures may, consistent with Constitutional limitations, permit the Governor to surrender a fugitive on terms less exacting than those imposed by the Act of Congress. *In re Morgan*, [244 Cal. App. 2d 903, 53 Cal. Rptr. 642 (1966)]; *People ex rel. Matochik v. Baker*, 306 N.Y. 32, 114 N.E. 2d 194 (1953)." *Grano v. State*, 257 A.2d 768, 773 (Del. Super. 1969). In fact the Uniform Criminal Extradition Act, *supra*, has expanded the duty, for it allows extradition to be based on an information, as well as on the two documents—indictment or affidavit—allowed by the fed-

eral statute;[5] and it also provides, as the federal statute does not, for extradition of persons not in the demanding state at the time the crime was committed if the person could nonetheless be held criminally responsible there. Uniform Criminal Extradition Act, *supra*, §6, 19 P.S. §191.6.

The courts in several jurisdictions have examined these several provisions and have concluded that there is no need for the demanding papers to show probable cause. *Wortham v. State*, 519 P.2d 797 (Alas. 1974); *Stack v. State ex rel. Ebbole*, 284 So. 2d 472 (Fla. App. 1973); *Smith v. State*, 89 Idaho 70, 403 P.2d 221 (1965), *cert. denied*, 383 U.S. 916 (1966); *People v. Woods*, 52 Ill. 2d 48, 284 N.E. 2d 286 (1972); *Bailey v. Cox*, 296 N.E. 2d 422 (Ind. 1973); *In re Moore*, 313 N.E. 2d 893 (Mass. App. 1974); *McEwen v. State*, 224 So.2d 206 (Miss. 1969); *Salvail v. Sharkey*, 108 R.I. 63, 271 A.2d 814 (1970). To the extent that the opinions in these cases set forth the logic they employ (and some do not), they seem to follow a single pattern: They note that the federal and state statutes are implementations of the extradi-

---

5. "No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing, ... and accompanied by *a copy of an indictment* found or *by information supported by affidavit* in the state having jurisdiction of the crime or *by a copy of an affidavit made before a magistrate* there, together with a copy of any warrant which was issued thereupon or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The *indictment, information or affidavit* made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state, and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand." Uniform Criminal Extradition Act, *supra*, §3, 19 P.S. §191.3 (emphasis added).

tion clause, that extradition is a summary process, and that nowhere either in the extradition clause or in the statutes is there an explicit requirement of a showing of probable cause, and from these facts they conclude that there therefore is no such requirement; some go so far as to imply that to impose such a requirement would violate the extradition clause and would therefore itself be unconstitutional. *See, e.g., Bailey v. Cox, supra.*

This reasoning is not persuasive, for it does not go far enough. For a statutory provision to be constitutional, it must conform to all parts of the Constitution. To say that it implements one clause—here, the extradition clause—is not enough if in carrying out that implementation it directly conflicts with another part of the Constitution. Therefore, for the federal and state extradition statutes to be constitutional, they must conform not only to the requirements of the extradition clause, but also to the requirements of the fourth and fourteenth amendments, which is to say, as regards this case, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing . . . the persons . . . to be seized." U.S. Const. amend. IV.

When a person is detained pursuant to a Governor's Warrant, he has been "seized," or "arrested." "An arrest may be accomplished by 'any act that indicates an intention to take [a person] into custody and that subjects him to the actual control and will of the person making the arrest:' 5 Am. Jur. 2d, Arrest, §1, p. 695." *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 311 (1963). Consequently, when a person is arrested pursuant to a Governor's Warrant, the arrest must be based on probable cause; otherwise it is unconstitutional under the fourth and fourteenth amendments, and the person arrested is entitled to a writ of habeas corpus, if he asks for it before an indictment is lodged. *See Commonwealth v. Krall,* 452 Pa. 215, 304 A.2d 488 (1973), and cases cited therein. This reasoning has been followed in several

other jurisdictions that have reached the issue and have held that an arrest pursuant to a Governor's Warrant must be made upon probable cause. *Kirkland v. Preston,* 385 F.2d 670 (D.C. Cir. 1967); *United States ex rel. Grano v. Anderson,* 318 F.Supp. 263 (D. Del. 1970), *aff'd,* 446 F.2d 272 (3d Cir. 1971); *People v. McFall,* 175 Colo. 151, 486 P.2d 6 (1971); *Hithe v. Nelson,* 172 Colo. 179, 471 P.2d 596 (1970); *Grano v. State, supra; State v. Fletcher,* 283 So. 2d 495 (La. 1973); *People v. Artis,* 32 App. Div. 2d 554, 300 N.Y.S. 2d 208 (2d Dep't 1969); *State ex rel. Foster v. Uttech,* 31 Wis. 2d 664, 143 N.W. 2d 500 (1966).

As has been mentioned, there has been some suggestion, *Bailey v. Cox, supra,* that this conclusion is inconsistent with the extradition clause. I reject this suggestion. None of the cases cited (and all that have been found have been cited) explicity deals with the question of whether it would be inconsistent with the extradition clause to require a showing of probable cause in the requisition papers. The cases holding that probable cause is required, do so by interpreting the pertinent implementing statute in light of the fourth and fourteenth amendments; they do not return to the extradition clause to determine whether the statute as so interpreted still conforms to the clause. The cases holding that probable cause is not required either limit their consideration to the implementing statute and the extradition clause, and do not discuss the fourth and fourteenth amendments, or else they treat the statute as totally dispositive, and do not discuss the Constitution at all. To my knowledge, no court has ever held that to require a showing of probable cause in the requisition papers would be an unconstitutional violation of the extradition clause. Nor do I find any reason for so holding. There is nothing in the extradition clause itself, or in the federal or state statutes that implement it, or in the policy behind it that would be violated by a requirement of probable cause.

The key words in the extradition clause, quoted *ante* at 382, are "charged" and "Demand." It is not unreasonable to interpret these as being consonant with the requirements of the fourth and fourteenth amendments that the "charge" contained in the "Demand" for arrest at least show probable cause to believe the suspect committed the crime; and indeed, to interpret it otherwise would be unreasonable, for then constitutional provisions that could be read in harmony would be brought into unnecessary and therefore presumably unintended discord.[6]

The majority argues that whether there has been a showing of probable cause is an issue that would be better left to the consideration of the courts of the demanding state. However, appellant is at present de-

---

6. The opinions in *Commonwealth ex rel. McGowan v. Aytch*, 233 Pa. Superior Ct. 66, 334 A.2d 750 (1975), *Commonwealth ex rel. Colcough v. Aytch*, 227 Pa. Superior Ct. 527, 323 A.2d 359 (1974), and *Commonwealth ex rel. Ebbole v. Robinson*, 223 Pa. Superior Ct. 119, 299 A.2d 47 (1972), do not state holdings to the contrary. In *McGowan*, we held that where the papers on their face complied with the Uniform Criminal Extradition Act, the petitioner's contention, that the warrant contained in the extradition papers was inadequate, should be litigated in New Jersey, the demanding state. In *Ebbole*, the issue was whether section 3 of the Act, 19 P.S. §191.3, standing alone, requires a showing of probable cause; we held that it did not. While the opinion does hold that the statute does not require a showing of probable cause, it does not follow from this that to require such a showing would violate the statute. In *Colcough*, the petitioner challenged his extradition, not on the ground that the warrant was not issued upon a magistrate's independent determination of probable cause, but on the ground that some of the evidence upon which the warrant was based had been obtained as a result of an illegal stop. Thus the issue was not the adequacy of the warrant but the propriety of police conduct. We held that this issue was better left to be litigated in the demanding state. Consequently, in neither *McGowan* nor *Ebbole* was any issue of constitutional dimensions raised or decided.

tained under the power of this Commonwealth. She is presumably innocent. There is no question that she is entitled to a hearing on a writ of habeas corpus if she wishes it. Uniform Criminal Extradition Act, *supra*, §10, 19 P.S. §191.10. It is a small inconvenience to the demanding state to require it to supply a set of requisition papers that show probable cause for her arrest, while to require her to travel there (i.e., Kansas City, Kansas—about 1,000 miles from Philadelphia), in custody, for a hearing on precisely the same issue is a significant invasion of her liberty, which can be avoided with relative ease. Judge WRIGHT has stated the matter well in his leading opinion in *Kirkland v. Preston*, 385 F.2d 670, 676-77 (D.C. Cir. 1967):

> "The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition. It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition. This right to probable cause confirmation seems especially appropriate in view of the fact that the accused will have no access to an evidentiary preliminary hearing on probable cause until he finally arrives in the accusing jurisdiction.

> "In addition, the interests of the asylum state are advanced by its own probable cause determination. For it would be highhanded to compel that jurisdiction to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded, the asylum state will have

expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary."

Accordingly, I would hold that where, as in this case, the demand for extradition is based on an affidavit sworn before a magistrate in the demanding state, the affidavit must be sufficient to support a finding of probable cause under the Fourth and Fourteenth Amendments.[7]

The standard that the lower courts of this Commonwealth should apply in making the probable cause determination is the federal standard of probable cause, not that enunciated in the decisional law of this Commonwealth. This is because the Pennsylvania standard may be more liberal than the federal standard. Since state procedures cannot burden the process of extradition, *see ante* at 383, application of the Pennsylvania standard, to the extent it is more liberal than the federal standard, would place an impermissible, unconstitutional burden on the extradition clause.

## II

The requisition papers from the Governor of Kansas include the following: (1) an "Application for Requisition" in the form of an affidavit sworn to by Nick Tomasic, the District Attorney, before Tudor NELLOR, a Judge of the Magistrate Court, on September 6, 1973;[8] (2) a complaint sworn to by Mr. Tomasic before Frank Koska,

---

7. Although the issue is not presented here, I note that the cases generally agree that a demand based on an indictment that is proper on its face is sufficient. *See, e.g., Kirkland v. Preston, supra.* There is a difference of opinion, however, when the demand is by information supported by an affidavit. *Compare Salvail v. Sharkey,* 108 R.I. 63, 271 A.2d 814 (1970) (information is as self-sustaining as an indictment and need not show probable cause on its face) *and In re Moore,* 313 N.E. 2d 393 (Mass. App. 1974), *with Grano v. State,* 257 A.2d 768 (Del.Super. 1969) (affidavit in support of an information must show probable cause).

8. *See* note 4, *supra.*

the Clerk of the Magistrate Court, on May 7, 1973; and (3) a warrant for appellant's arrest issued by Judge NELLOR on May 7, 1973.[9] In each of these three documents it is stated that "on or about the 25th [or 24th][10] day of April, 1973, one Ruby Marshall did deliberately, with premeditation and malice aforethought kill and murder a certain Hezekial Marshall by striking Hezekial Marshall on the head with a hammer, contrary to K.S.A. 21-3401" (K.S.A. §21-3401 defines murder in the first degree.)

The Commonwealth argues only that this statement is sufficient under Section 3 of the Uniform Criminal Extradition Act, *supra,* 19 P.S. §191.3; it does not argue that the statement is sufficient to show probable cause (although neither does it concede insufficiency). Clearly, however, the statement does not show probable cause, for it is only a conclusion; no facts are recited in support of the conclusion. *Whiteley v. Warden,* 401 U.S. 560 (1971); *Spinelli v. United States,* 393 U.S. 410 (1969); *Aguilar v. Texas;* 378 U.S. 108 (1964); *Giordenello v. United States,* 357 U.S. 480 (1958).[11]

---

9. The papers contain all the necessary certifications, and it is not contested that they all are duly executed. There are also two more affidavits. One is by Mr. Tomasic, dated September 6, 1973, and sworn to before a notary public, not a magistrate; the other dated September 11, 1973, and sworn to before the same notary, is by Richard Delich, the detective in charge of the investigation in Kansas. Neither of these affidavits is pressed upon us by the Commonwealth as showing probable cause to issue the warrant. However, even if they were, they would have to be rejected for the reasons given in notes 11 and 14, *infra.*

10. The warrant uses the 24th as the date of the crime, while the application for requisition and the complaint say the 25th. There is no challenge to this discrepancy on appeal.

11. The affidavits by Mr. Tomasic and Mr. Delich, referred to in note 9, *supra,* likewise contain no factual basis for the conclusions they contain. The former merely states that Mr. Tomasic is the District Attorney of Wyandotte County, Kansas, that he is familiar with the case, and that he 'is satisfied that a crime has

## III

Appellant argues that the habeas corpus court cannot look beyond the face of the warrant and affidavits in making the probable cause determination that I believe is required by the constitution, and that consequently her discharge is required. The Commonwealth, however, argues that the entire record, including all the testimony taken at appellant's hearing, should be considered on the issue of probable cause. Proceeding from the premise that probable cause must be shown, I believe that the procedure proposed by the Commonwealth for demonstrating its presence is the correct one, but with an important limitation.

Appellant might be correct if it were always the case that in reviewing the determination of probable cause to issue a warrant the court could look only to the warrant and accompanying affidavits. This is true of search warrants in Pennsylvania because of Pa.R.Crim.P. 2003(a). *See also Commonwealth v. Milliken,* 450 Pa. 310, 300 A.2d 78 (1973). It is also true of arrest warrants in the federal system because of Fed.R.Crim.P. 4(a). *Giordenello v. United States,* 357 U.S. 480 (1958). However, it has never been held that the fourth amendment (either itself or as applied to the states through the fourteenth amendment) thus restricts the inquiry to the

---

been committed in the State of Kansas, and that the said Ruby Marshall is the guilty person(s)" [*sic*]. It is a typewritten form and apparently is intended as proof that a crime was committed, not as proof of any underlying facts to support the conclusion that the person named is likely to have committed it. Mr. Delich's affidavit states that he was the detective who investigated the crime and "[t]hat as a result of said investigation it was determined that Mrs. Ruby Marshall was a very likely suspect in said homicide." It also states that the results of the investigation were turned over to the District Attorney's office and that charges have been brought. Again, it does not state the factual basis of its conclusion. Thus, even if these two affidavits were to be considered as relevant to the issue of probable cause, *cf.* note 14, *infra,* they are inadequate.

writings;[12] and in an interstate extradition case the standards of the fourth amendment should control, because it, not any rule of court, is what in my view requires a showing of probable cause. That is, only the fourth amendment, not any federal or state statute or rule of court, can in any way qualify the extradition clause. If a statute or rule purported to do so, it would be unconstitutional to the extent it succeeded, for, as was discussed in part I of this opinion, any qualification of the scope of one provision of the United States Constitution can only come from another provision of the Constitution.

The Commonwealth is therefore correct that there is no reason why the determination of probable cause must be limited to matters stated in the requisition papers. It is incorrect, however, on the scope of the hearing on the petition for a writ of habeas corpus. The issue at the

12. *See generally Commonwealth v. Milliken, supra.* We are aware of the following statement in the Third Circuit's opinion in *Grano v. Anderson, supra*: "Probable cause in the context of arrest warrants depends on the presence of two criteria: (1) the warrant and supporting documents must justify a finding of probable cause to believe that the offense has been committed, and (2) the warrant and documents supporting it must demonstrate a sufficient basis for a finding of probable cause that the party named in the warrant committed the offense charged. *See Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969)." 446 F.2d at 273. However, footnote 3 of *Spinelli* indicates that that case is not clear authority for the quoted proposition: "It is, of course, of no consequence that the agents might have had additional information which could have been given to the Commissioner. 'It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention.' *Aguilar v. Texas,* 378 U.S. 108, 109, n 1, 12 L.Ed. 723, 725, 84 S.Ct. 1509 (emphasis in original)." Moreover, in *Grano* the Third Circuit held that the affidavit was sufficient, so there was no need to determine whether it would be permissible to inquire beyond its face. Thus, the suggestion in *Grano* that inquiry could not go beyond the warrant and supporting documents was in nature of *dictum,* and is not entitled to deference. *See* note 1, *supra.*

hearing should not be whether as of the time of the hearing it appears that there is probable cause to arrest the petitioner. Rather, the purpose of the hearing should be to determine whether the warrant from the demanding state, which is the basis of the petitioner's detention, was issued on the basis of probable cause. If the requisition papers do not themselves show probable cause, the habeas corpus court would be able to go beyond them to determine whether there was probable cause; however, in doing so the court should only consider evidence that was made known to the issuing magistrate in the demanding state before he issued the warrant. What he may have learned later, or other information not communicated to him, is irrelevant. *See Aguilar v. Texas* and *Spinelli v. United States, ante* at note 10. If he had sufficient facts before him to justify an independent determination of probable cause under Fourth Amendment standards when he issued the warrant, extradition should be ordered; if he did not, the petitioner should be granted a writ of habeas corpus and be discharged.

In the present case, four witnesses testified at the hearing on appellant's petition for a writ of habeas corpus: Detective Delich of the Kansas City, Kansas, Police who supervised the investigation; Donnie Smith, an F.B.I. agent, who arrested appellant in Philadelphia on the charge of unlawful flight to avoid prosecution in connection with the Kansas homicide; John Butaky, an Assistant District Attorney from Kansas City, Kansas; and Eugene Marshall, the victim's brother. The record is lacking any testimony that would indicate that any information other than that contained in the complaint was ever brought to the attention of the magistrate who issued the warrant. There is nothing to indicate that Agent Smith or Mr. Marshall had anything to do with or knew anything about the issuance of the warrant. Detective Delich and Assistant District Attorney Butaky apparently were involved in the investigation leading to

the complaint; they both reported to District Attorney Tomasic, who signed the complaint. The detective, however, gave no testimony as to what was brought to the magistrate's attention before the warrant was issued;[13] and although Mr. Butaky apparently helped prepare the complaint, he testified that he did not see the magistrate sign the warrant; his testimony does not indicate that any information in addition to the conclusion contained in the complaint was ever communicated to the magistrate.

Under these circumstances, I cannot now determine if the issuing magistrate had sufficient facts before him to be able to make an independent judgment as to whether there was probable cause for the issuance of the warrant for appellant's arrest; he may have, but the record does not show it. I would therefore remand this case for a further hearing consistent with this opinion.

HOFFMAN, J., joins in this dissenting opinion.

---

13. He did identify his affidavit, discussed *supra* at notes 9 and 11. However, this affidavit, like that of Mr. Tomasic, was dated four months after the warrant was issued and thus could not have served as a basis for its issuance. This is likewise true for the "Requisition for Extradition" signed by Mr. Tomasic.