369 A.2d 1321

COMMONWEALTH of Pennsylvania ex rel.
Drew Kelly COLBERT, Appellant,

v.

Louis AYTCH, Superintendent, Philadelphia
County Prisons.

Superior Court of Pennsylvania.

Submitted March 22, 1976.

Decided Nov. 22, 1976.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court improperly ordered extradition because (1) the proceeding was properly within the jurisdiction of the Juvenile Court and not the Court of Common Pleas; (2) the Commonwealth failed to provide a Section 15 hearing required by the Uniform Criminal Extradition Act[1]; and (3) the arrest warrant did not demonstrate probable cause to believe that appellant committed the crime alleged by the demanding state.

Appellant, seventeen years old, and wanted in South Carolina for murder, was arrested as a fugitive in

---

1. Act of July 8, 1941, P.L. 288, § 15; 19 P.S. § 191.15.

Philadelphia, on April 21, 1975.[2] After a preliminary hearing held that day, the court concluded that appellant appeared to be the person charged·in South Carolina, and the thirty-day hearing was set for May 19. See 19 P.S. § 191.15. Prior to May 19, appellant unsuccessfully attempted to transfer the proceeding to Juvenile Court. Because the demand papers had not yet arrived from South Carolina on May 19, the court ordered appellant recommitted until June 18, when appellant was recommitted a second time for the same reason pursuant to 19 P.S. § 191.17. On July 18, the court dismissed all prior detainers, and the appellant was arrested on the Governor's warrant, which had been issued the same day. On July 30, appellant requested leave to file a writ of habeas corpus, and a hearing was scheduled for August 4. On August 4, the hearing on the habeas corpus petition was continued, at appellant's request, until September 3, when testimony was taken. On September 16, following the submission of briefs and argument, the court denied appellant's habeas corpus petition and ordered extradition.

Appellant first contends that because he is a juvenile the court should have granted his petition to transfer the case to the Juvenile Court. In support of his argument, appellant relies on the provisions of Pennsylvania's Juvenile Act.[3]

The jurisdiction of the Juvenile Court is limited exclusively to four types of proceedings:

2. Although under the Appellate Court Jurisdiction Act of July 31, 1970, P.L. 673, No. 223, art. II § 202; 17 P.S. § 211.202, felonious homicide is under the exclusive jurisdiction of the Supreme Court, the section refers to cases in which the accused has been convicted in Pennsylvania. When the trial on the felonious homicide charge is to take place in another state, and Pennsylvania's jurisdiction consists solely of the extradition proceeding, that proceeding is clearly within the jurisdiction of the Superior Court. 17 P.S. § 211.302. See *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa.Super. 527, 323 A.2d 359 (1974).

3. Act of December 6, 1972, P.L. 1464, No. 333, § 3; 11 P.S. § 50–101 et seq.

"(1) Proceedings in which a child is alleged to be delinquent or deprived.

"(2) Proceedings arising under sections 32 through 35 [11 P.S. § 50–329 to 11 P.S. § 50–332].

"(3) Transfers arising under section 7 [11 P.S. § 50–303].

"(4) Proceedings under the 'Interstate Compact on Juveniles,' section 731, act of June 13, 1967 (P.L. 31), known as the 'Public Welfare Code.' " [4] 11 P.S. § 50–103.

Appellant argues that subsections (1), (3) and (4) supply the basis of the Juvenile Court's jurisdiction over the instant case.

■ Appellant's reliance on subsection (1) is misplaced. The instant proceedings were commenced by South Carolina authorities in order to secure appellant's return to that state. The only issue before the lower court, therefore, was whether the demanding state had satisfied the requirements of the Extradition Act. Nevertheless, appellant contends that because Pennsylvania defines "delinquent act" as, *inter alia,* "an act designated a crime under the law of this State, or of another state if the act occurred in that state . . . ", 11 P.S. § 50–102(2), "[d]elinquency, . . . if it refers to acts committed in other states, must relate to a status in Pennsylvania. That status, in this case, is that of a fugitive, and being or remaining a fugitive must be considered a delinquent act bringing the appellant within the Family Court jurisdiction." Appellant's assertion that being a fugitive, i. e., having committed a crime in another state and escaping legal process, constitutes a delinquent act under Pennsylvania law is obviously correct, but is totally irrelevant to the issue presented by this case. If this were a case involving a petition by *Penn-*

4. Act of June 13, 1967, P.L. 31, No. 21, art. 7, § 731; 62 P.S. § 731.

*sylvania* authorities to have appellant declared a delinquent child, under our law, jurisdiction would clearly lie in the Juvenile Court. 11 P.S. § 50–103(1). However, Pennsylvania has never sought to obtain jurisdiction over appellant for any purpose other than to return him to South Carolina. Therefore, the Juvenile Court cannot obtain jurisdiction over the proceedings under 11 P.S. § 50–103(1) because they are not proceedings "in which a child is alleged to be delinquent . . .", but are merely proceedings to execute South Carolina's request.

█ Subsection (3) is similarly inapplicable. This section refers to § 50–103, which provides that in a criminal proceeding brought in adult court, in which a juvenile is charged with a crime other than murder, the court must transfer the case to Juvenile Court. It further states that if the crime charged is *murder,* the court may, in its discretion, transfer the case. Obviously, this section applies when Pennsylvania seeks to enforce its own criminal law. It does not apply when, as here, the juvenile is before the court in Pennsylvania solely upon the request of another state.

█ Appellant relies primarily on subsection (4), which gives the Juvenile Court jurisdiction over cases arising under the Interstate Compact on Juveniles, supra. Until 1973, the Compact provided a procedure for the return of juveniles who had run away from home, escaped from an institution, or had been adjudged delinquent.[5] In 1973, the Compact was amended to include Article XVII,[6] which provides that the Compact "shall be construed to apply to any juvenile *charged* with being a delinquent by reason of a violation of any criminal law" (emphasis supplied). Appellant contends that because the amendment is applicable, the case is properly within the jurisdiction of the Juvenile Court.

5. 62 P.S. § 731, Article III.
6. Act of July 25, 1973, No. 49, § 2.

South Carolina unlike Pennsylvania, does *not* expressly exclude the crime of murder from its definition of delinquency. S.Car.Code 1952, § 15–1103(9)(a). Compare 11 P.S. § 50–102. It would seem, therefore, that if South Carolina has adopted the Amendment to the Interstate Compact on Juveniles, the Compact would apply because appellant is "charged with being a delinquent". Thus appellant would be entitled to transfer to the Juvenile Court under 11 P.S. § 50–103(4).

This result, however, is prohibited by § 15–1103(9) of the South Carolina Juvenile and Domestic Relations Courts Act, *supra*, which defines "delinquent child" as "a child over seven and under sixteen years of age in a domestic relations court or under seventeen years of age in a juvenile domestic relations court who (a) violates any law . . . " Appellant was born on October 10, 1957, and the crime was allegedly committed on December 13, 1974. Thus, appellant was clearly *over* the age of seventeen at the time of the alleged crime. Under South Carolina law, therefore, he is not a juvenile, and the Interstate Compact on Juveniles does not apply. Thus, South Carolina properly requested that appellant be returned under the Uniform Criminal Extradition Act rather than the Interstate Compact on Juveniles. The court below, therefore, had jurisdiction to order appellant extradited.

Appellant next contends that the Commonwealth failed to provide a § 15 hearing within thirty days of arrest. Specifically, appellant maintains that "[a] Section 15 identification hearing requires a preliminary inquiry into the identity of the fugitive to determine if the person held is the person charged in another jurisdiction." Appellant correctly points out that §§ 15 and 17, when read together, require that within thirty days of arrest, a hearing must be held to determine if the Governor's warrant has been received. If it has not, the accused may be recommitted for an additional sixty days to await the warrant. Appellant's argument, however,

misconstrues the language of § 15. Section 15 provides, "If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged . . . ", the accused can then be held for thirty days pending the arrival of Governor's warrants. This language clearly refers back to the preliminary hearing required by § 14, which must be held with all practicable speed, and at which it must merely *appear* that the person held is the person wanted by the demanding state. The record demonstrates that the required preliminary identification of appellant was made at the arraignment on the day of arrest. At this time, appellant was committed to custody for thirty days, pursuant to § 15. On May 19, the Governor's warrant had not yet been received, and the court, pursuant to § 17, ordered appellant recommitted for an additional sixty days. Appellant was arrested on valid' governor's warrants on July 18, clearly within the statutory period. Appellant's argument is, therefore, without merit.

 Appellant's third contention, that the demand state's warrant failed to demonstrate probable cause to believe that appellant committed the crime alleged by South Carolina, likewise must fail under present Pennsylvania law. This Court has recently held on two occasions that a demonstration of probable cause in the demanding state's warrant is unnecessary in the extradition proceeding and is properly raised only at trial in the demanding state. *Commonwealth ex rel. Lattimore v. Gedney,* 240 Pa.Super. 226, 363 A.2d 786, No. 1318 October Term 1975 (filed April 22, 1976) ; *Commonwealth ex rel. Marshall v. Gedney,* 237 Pa.Super. 372, 352 A.2d 528 (1975). See also *Commonwealth ex rel. Ebbole v. Robinson,* 223 Pa.Super. 119, 299 A.2d 47 (1972).

Order affirmed.

SPAETH, J., files a dissenting opinion.

SPAETH, Judge, dissenting:

I dissent for the reasons discussed in my dissenting opinion in *Commonwealth ex rel. Robert Reyes v. Aytch,* 246 Pa.Super. 287, 369 A.2d 1325 (1976), and *Commonwealth ex rel. Marshall v. Gedney,* 237 Pa.Super. 372, 352 A.2d 528 (1975).