Commonwealth ex rel. Colcough, Appellant, *v.* Aytch.

Submitted September 14, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

Before MARSHALL, J.

*Robert A. Stein,* Assistant Defender, *Leonard Sosnov* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*James T. Ranney,* Assistant District Attorney, *Milton M. Stein,* Assistant District Attorney, and *Arlen Specter,* District Attorney, for appellee.

OPINION BY SPAETH, J., April 3, 1974:

This is an appeal from an order denying a petition for a writ of habeas corpus and ordering appellant to

be extradited to New Jersey. Appellant raises several issues relating to the application of the Uniform Criminal Extradition Act, Act of July 8, 1941, P. L. 288, 19 P.S. §191.1 *et seq.*

On July 21, 1972, at 11:30 P.M. four black men held up the Twilight Bar in Camden, New Jersey, shot and killed the bartender, and fled in a blue Ford Falcon station wagon with a Pennsylvania license plate. A witness at the scene notified the Camden police of the crime, and they notified the Philadelphia police. At about 12:40 A.M. a Philadelphia police officer spotted a car meeting the description, occupied by four black men, on Interstate Route 95 near the bridge to Camden. The officer stopped the car, but as he got out of his patrol car the car pulled away. After pursuit, the officer managed to stop the car right outside a police station. The driver had no license, so all of the occupants were ordered out of the car. Police from the station came out to help, and one of them saw a pistol on the front seat and a brown paper bag (which was later found to contain money and receipts from the Twilight Bar) on the floor. The four men were taken into the police station but refused to identify themselves. They were nevertheless identified through the use of "mug shots" and were held. Later in the day, New Jersey officials came to Philadelphia and took the gun, the bag, and the money and receipts. The men were charged in New Jersey with murder, and their extradition was requested by the Acting Governor of New Jersey.

On August 22, 1972, the matter was listed for hearing but the Commonwealth was not ready and it was relisted for September 20. In the meantime, on September 7 the Governor of Pennsylvania reviewed New Jersey's request for extradition and authorized rendition pursuant to the Uniform Criminal Extradition Act. By September 20, however, the requisite papers had not been prepared, and the matter was continued to Octo-

ber 3. On October 3 the papers had still not been prepared, and over appellant's counsel's objection and motion for discharge the matter was continued to October 10. On October 10 the Governor's warrant was presented and appellant's counsel was given nine days to file a petition for habeas corpus. Testimony on the petition was heard by The Honorable Merna B. MARSHALL on October 19 and 20 and a decision held under advisement. On October 26 the judge denied the petition but gave appellant five days to appeal. On October 30 appellant did appeal, and also petitioned this court for a supersedeas, which was granted.

Although the issue is raised by neither party,[1] we must always be cognizant of the extent of our jurisdiction. Under Section 302 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, No. 223, 17 P.S. §211.302, the Superior Court has jurisdiction over all appeals from the Courts of Common Pleas except those within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court. One class of cases within the exclusive jurisdiction of the Supreme Court is "felonious homicide." 17 P.S. §211.202 (1). Since appellant is charged with felonious homicide it might seem that we should transfer his appeal to the Supreme Court. "Felonious homicide," however, refers to cases in which the appellant has been convicted in Pennsylvania. Since felonious homicide is so grave a crime it is appropriate that no one should stand convicted of it without the opportunity of having his conviction reviewed by the highest court. This reason does not apply where, as here, the appellant will stand trial in another State; if he is convicted there, he may seek appellate review there. So far as regards whether he is to be extradited, this court can decide that matter as well as any other.

---

[1] The case was submitted for decision without argument, and the Commonwealth did not file a brief.

Appellant's first contention is that the evidence of his presence in the demanding state when the crime was committed was the fruit of an illegal arrest, and that the hearing judge erred in not allowing him to raise this issue. We do not reach the issue because we have concluded that the hearing judge was correct in holding that appellant could not raise it.

The procedural safeguards required in most criminal proceedings are irrelevant to extradition proceedings. This is because the Constitution provides that extradition is summary in nature: "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." U. S. Const., art. IV, §2, cl. 2.

Under the Uniform Criminal Extradition Act extradition will be ordered upon proof of four facts: (1) the subject of the extradition is a person charged with a crime in the demanding state; (2) the subject of the extradition was in the demanding state at the time of the crime; (3) the subject is a fugitive from the demanding state; and (4) the requisition papers are in order. *Commonwealth ex rel. Coades v. Gable*, 437 Pa. 553, 264 A. 2d 716 (1970) ; *Commonwealth ex rel. Flood v. Pizzo*, 434 Pa. 208, 252 A. 2d 656 (1969) ; *Commonwealth ex rel. Reis v. Aytch*, 225 Pa. Superior Ct. 315, 310 A. 2d 681 (1973) ; *Commonwealth v. Kulp*, 225 Pa. Superior Ct. 345, 310 A. 2d 399 (1973).

In deciding whether these four facts have been proved, it has been consistently held that a claim of procedural impropriety in the demanding state will not be considered. Thus, on an extradition from Texas to California, an allegation that the petitioner could not get a fair trial was left to be litigated in the California courts. *Watson v. Montgomery*, 431 F. 2d 1083 (5th

Cir. 1970). An allegation that the petitioner's life would be in danger if he were returned to Mississippi to face charges of escape from prison was held irrelevant in *Commonwealth ex rel. Hatton v. Dye,* 373 Pa. 502, 96 A. 2d 127 (1953) ; *accord Commonwealth ex rel. Huey v. Dye,* 373 Pa. 508, 96 A. 2d 129 (1953) ; *and see Sweeney v. Woodall,* 344 U.S. 86 (1952) (alleged cruel and unusual punishment in demanding state). An unsupported allegation of an illegal arrest elsewhere was dismissed without elaboration in *Brown v. Fogel,* 387 F. 2d 692 (4th Cir. 1967), *cert. denied,* 390 U.S. 1045 (1968).

In the present case the alleged impropriety occurred in the asylum rather than in the demanding state. The appellant seeks to make this distinction the basis of bringing his case within the usual four fact test. His argument seems to be as follows: The arrest was not based on probable cause; therefore the gun, bag, money, and receipts should be suppressed as the fruit of the arrest; the gun, bag, money, and receipts are the only evidence placing appellant in New Jersey at the time of the robbery and homicide; with this evidence suppressed there is no proof that appellant was in the demanding state at the time of the crimes; therefore the second fact of the four fact test has not been proved, and appellant should not be extradited. In advancing this argument, appellant places great reliance on the following language from *Commonwealth ex rel. Hatton v. Dye, supra* at 506-507, 96 A. 2d at 129 (1953) : "The obvious intendment of the Uniform Criminal Extradition Act and the recent statements of this court and the Supreme Court of the United States was to restrict the scope of a hearing on habeas corpus to the legality of the arrest of the fugitive in the asylum state and the propriety of the requisition procedure . . . . If relator's rights under the United States Constitution have been violated, he must exhaust his remedy in the state where

the alleged violation has occurred, and in the event that he is there unsuccessful in obtaining redress, he may then bring his grievance before the Federal Courts. See Brown v. Allen, 344 U.S. 443 [1953]."

As stated above, the issue in *Hatton* was whether the petitioner's life would be in danger if he were returned to Mississippi to face charges of escape from prison. The "legality of the arrest" was not an issue, and no case was cited in support of the proposition that the legality of the arrest could be raised.[2] Nor did the court explain what it meant by referring to the "legality of the arrest." No other case has been cited, and research has not disclosed any other Pennsylvania case that mentions "legality of the arrest" as in any way pertinent to the four fact test. We therefore conclude that the court was using the words "legality of the arrest" as they are used in Section 10 of the Uniform Criminal Extradition Act, 19 P.S. §191.10, that is, as referring to the prisoner's right to a hearing to determine whether the provisions of the Act have been complied with. There is nothing to suggest that the court intended to import into an extradition hearing the constitutional rights available incident to trial.

The mere fact that the alleged procedural error occurred in the asylum state is not enough to require a hearing there rather than in the demanding state. In *United States ex rel. Vitiello v. Flood*, 374 F. 2d 554 (2d Cir. 1967), the petitioner claimed that he could not be extradited from New York to Florida because the statement proving that he was in Florida at the time of the crime was taken by New York police in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The court

---

2 *Brown v. Allen*, 344 U.S. 443 (1953), which was the only case cited to support the quoted passage, does not deal with either the legality of the arrest or the proper place to litigate a constitutional claim; nor is it an extradition case. It simply deals with the scope of Federal habeas corpus relief.

held that the issue was not properly raised at an extradition proceeding and that the petitioner would have to move for the suppression of the New York statement when he got to Florida: "Miranda does not apply to rendition proceedings or hearings on petitions for habeas corpus which are incident thereto. Interstate rendition proceedings are summary in nature and the accused is not entitled to all of the procedural protections of a criminal trial. [Citations omitted.] . . .

"If Vitiello is put to trial on the charges in the information, all of these safeguards will be available to him, and any evidential matter of this kind which has been unlawfully obtained will be suppressed or excluded. His Constitutional right to the use of such limitations on the use of evidence on the issue of his guilt or innocence is not at issue in the rendition proceeding. What is in issue is the constitutional right of the State of Florida to have Vitiello promptly returned to that state on a showing of probable cause." *Id.* at 557.

The most compelling case we have found is *Martin v. State of Maryland,* 287 A. 2d 823 (D.C. Ct. App. 1972). Martin was contesting an attempt to extradite him from the District of Columbia to Maryland. The issue before the court was quite similar to the issue in the present case: "[W]hether, as appellant contends, the Chief Judge of the Superior Court [of the District of Columbia], before ordering extradition should have held a hearing on the issue of whether there was probable cause for the earlier arrest; whether evidence was illegally seized at that time; whether the Maryland indictment was the fruit of the illegal arrest and if so should it be excluded from evidence at the extradition hearing?" *Id.* at 825. The court held that the right "to test the legality of the . . . arrest" under the District of Columbia extradition statute (which is similar, but not identical, to ours) did not contemplate such a hearing, and that Martin should be extradited to Mary-

land, where he could move for the suppression of the evidence at trial: "[A]ppellant's contention, aimed at the exclusion of the Maryland indictment at the extradition hearing would, if granted, amount to a refusal to honor Maryland's request for extradition. To sustain the appellant on this ground would defeat the historic purposes of extradition and deprive the courts of the demanding state of an opportunity to determine the truth of the charges." *Id.* at 826.

Appellant has cited numerous forfeiture cases, in which procedural safeguards such as the exclusionary rule have been adopted, but these do not overcome the force of *Vitiello* and *Martin.* A forfeiture proceeding is a final adjudication on the merits; if a right is left unprotected there, there is no relief. An extradition hearing is a constitutionally-sanctioned means of removing a person to another state, where he will receive a full trial on the merits at which his rights will presumably be fully protected. Absent a decision from the United States Supreme Court[3] we are not in a position to change the gloss on the extradition clause.[4]

Appellant's second contention is that the Commonwealth did not meet its burden of proving by the weight of the credible evidence that appellant was the person named in the demanding papers.

It is true that the burden is on the Commonwealth to prove that the person being extradited is the person demanded. *Commonwealth ex rel. Coades v. Gable, supra; Commonwealth ex rel. Walker v. Hendrick,* 434 Pa. 175, 253 A. 2d 95 (1969) ; *Commonwealth ex rel. Edgar v. Davis,* 425 Pa. 133, 228 A. 2d 742 (1967). However,

---

[3] *See Kelly v. Griffin,* 241 U.S. 6 (1916), involving extradition to Canada, where Mr. Justice HOLMES, writing for the Court, held that an alleged illegality in the petitioner's arrest by local police did not void the "taking of [his] body" by the U. S. Marshal.

[4] It may be noted that the extradition clause immediately precedes the "runaway slave" clause. U. S. Const., art. IV, §2, cl. 3.

the mere refusal of appellant to reveal his name to the police cannot serve as a bar to extradition, which is the conclusion appellant seems to be advocating. Silence is not that golden. Section 20 of the Uniform Criminal Extradition Act, 19 P.S. §191.20, does not require that the prisoner's name be proved but speaks only of "identifying the person held as the person charged with the crime." The name in the demanding papers, if identification is by name, need only be sufficient to prove that the person before the court is the person wanted for the crime; no proof is required that the name in the papers is the prisoner's legal name. As stated by the hearing judge: "The factual situation reveals that the defendant's [sic] refused to volunteer their names to the police. However this does not prevent identification for extradition. The State of New Jersey knew that it wanted the four men who were accosted in the blue Falcon station wagon which, also, contained the bag of money and receipts. The men found in this vehicle are the petitioners, and this fact was uncontested.

"The New Jersey officials could have issued body warrants for 'John Doe's' if the names of the petitioners were undiscoverable. However, the police did supply names to New Jersey after making identification by photographs. The petitioners were identified and indicted because of their physical characteristics and their physical location on the night of the crime. The fact that they refuse to give their names does not prevent identification nor extradition. This court is satisfied that the persons wanted by the State of New Jersey and the petitioners are the same persons."

Appellant's final contention is that in granting more than one continuance to the Commonwealth, the court below violated Section 17 of the Uniform Criminal Extradition Act, 19 P.S. §191.17, which provides: "If the accused is not arrested under warrant of the Governor by the expiration of the time specified in the warrant

or bond, a judge or magistrate may discharge him or may recommit him for *a further period,* not to exceed sixty days, . . ." (Appellant's emphasis.)

In *People v. White,* 2 Mich. App. 493, 140 N.W. 2d 578 (1966), this provision was interpreted as allowing only one continuance, the court holding that while to grant one continuance of 60 days would have been valid, to grant two of 30 days each was not. We cannot agree with this interpretation. Although it is not good practice to grant numerous continuances, the purpose of Section 17 is to prevent undue delay between arrest and extradition. If (as appellant concedes) a continuance of 60 days can be granted, then several continuances do not prejudice any of the prisoner's rights so long as the total time is not more than 60 days.

The order of the lower court is affirmed. However, extradition is stayed for ten days from the date of this opinion in order to allow appellant to seek review by the Pennsylvania Supreme Court.