## Commonwealth, Appellant, *v.* Murphy.

38

Submitted June 13, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Howell K. Rosenberg, James A. Shellenberger,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*Phyllis H. Subin, Jonathan Miller,* and *John W. Packel,* Assistant Defenders, and *Benjamin Lerner,* Defender, for appellee.

OPINION BY HOFFMAN, J., September 22, 1975:

This appeal is taken from an order granting the appellee's petition for a writ of habeas corpus and refusing extradition.

On July 1, 1973, the appellee was arrested in Alexandria, Virginia, by agent Thomas Morehead of the local police department, for burglaries committed in Alex-

andria on June 4 and June 11, 1973. The complainant identified the appellee as the perpetrator of the June 4 burglary in the presence of agent Morehead. At the Virginia preliminary hearing, agent Morehead identified the appellee as the man he arrested. Subsequent to the preliminary hearing, both burglary charges were nolle prossed. The appellee was discharged and left the jurisdiction. New evidence was discovered soon afterwards, however, and an Alexandria Grand Jury indicted the appellee on the same charges.

On September 13, 1974, the appellee was arrested in Philadelphia and was charged with being a fugitive from Virginia. A preliminary arraignment was held in Municipal Court on the fugitive charge on September 14, 1974, and a "30 day" hearing was scheduled for October 15, 1974, pursuant to §§191.15 and 191.17 of the Uniform Criminal Extradition Act.[1] When the appellee appeared in court on October 15, 1974, the Commonwealth had not yet received the Governors' warrants and accompanying extradition documents. The appellee was, therefore, recommitted for an additional sixty days pursuant to §191.17 of the Act. On November 18, 1974, the appellee was arrested on valid Governors' warrants from Pennsylvania and Virginia. Thereafter the appellee challenged his extradition by filing a petition for writ of habeas corpus. The hearing was held on December 6, 1974, and the Governors' warrants and accompanying extradition documents were introduced in evidence. In addition, agent Morehead testified that the appellee was the individual he arrested in Virginia, and that the complainant positively identified the appellee as the perpetrator of the June 4, 1973 burglary in his presence. The sole evidence introduced by the appellee was a copy of the Municipal Court transcript. The lower court denied extradition because it found that the Commonwealth had failed to

---

1. Act of July 8, 1941, P.L. 288, 19 P.S. §191.1 et seq.

prove that the appellee was present in the demanding state at the time of the crime, and that the appellee's "30 day" hearing was held thirty-two days after initial confinement.

Under the Uniform Criminal Extradition Act, supra, extradition will be ordered upon proof of four facts: (1) the subject of the extradition is a person charged with a crime in the demanding state; (2) the subject of the extradition was in the demanding state at the time of the crime; (3) the subject is a fugitive from the demanding state; and (4) the requisition papers are in order. *Commonwealth ex rel. Coades v. Gable,* 437 Pa. 553, 264 A.2d 716 (1970); *Commonwealth ex rel. Flood v. Pizzo,* 434 Pa. 208, 252 A.2d 656 (1969); *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa. Superior Ct. 527, 323 A.2d 359 (1974). It is well-settled that when the extradition papers are in order, the allegations contained therein must be accepted as "prima facie true." *Commonwealth ex rel. Edgar v. Davis,* 425 Pa. 133, 135, 228 A.2d 742, 744 (1967). See also *Commonwealth ex rel. Raucci v. Price,* 409 Pa. 90, 185 A.2d 523 (1962); *Commonwealth ex rel. Reis v. Aytch,* 225 Pa. Superior Ct. 315, 310 A.2d 681 (1973). Therefore, once the Commonwealth introduces the extradition papers, it is incumbent upon the accused to show non-presence in the demanding state at the time of the crime. See *Commonwealth ex rel. Edgar v. Davis, supra.*

Appellee contends that it would be unjust to require him to show non-presence because at the time he left the demanding state, there were no criminal charges pending against him, and because approximately eighteen months had elapsed since the date of the offense. It is difficult to perceive the relationship between the appellee's status and his memory. We find no reason to distinguish between the appellee's situation and that of any other alleged criminal who avoids apprehension before leaving the jurisdiction. In theory, both the alleged criminal and the

appellee are presumed innocent, and therefore have no reason to remember their whereabouts at the time of the crime. Further, any rule shifting the appellee's responsibility of showing non-presence due to passage of time would reward the fugitive who avoids apprehension for long periods of time.

Even if we were to accept the appellee's contention, the Commonwealth has introduced sufficient evidence at the extradition hearing to show the appellee's presence in the demanding state at the time of the crime. Agent Morehead testified at the hearing that the complainant identified the appellee in his presence as the perpetrator of the June 4 burglary. Such hearsay evidence is admissible in extradition proceedings. *Commonwealth v. Kulp*, 225 Pa. Superior Ct. 345, 310 A.2d 399 (1973), and such evidence has been held sufficient to establish presence in the demanding state. *Commonwealth ex rel. Coades v. Gable*, supra; *Commonwealth ex rel. Reis v. Aytch*, supra.

The appellee also contends that the order discharging him was proper because he did not receive a hearing within thirty days of his initial confinement. In *Commonwealth v. McCaine*, 218 Pa. Superior Ct. 274, 276-277, 275 A.2d 867, 868 (1971), we stated: " '. . . there is an obligation to make certain that the requirements of the Uniform Extradition Act have been satisfied before permitting one to be surrendered to the executive authority of the demanding state.' *Commonwealth ex rel. Aronson v. Price*, 412 Pa. 493, 495, 194 A.2d 881, 882 (1963)." Sections 191.15 and 191.17 of the Uniform Criminal Extradition Act, read together, require that if the Governors' warrants have not arrived within thirty days of the original confinement, a hearing must be held to recommit the accused for another sixty days. In the instant case, the appellee did not receive his hearing until the thirty-second day following his initial confinement. The narrow issue presented, then, is whether the two-day delay in holding the hearing is sufficient reason to discharge the appellee.

Under the unusual circumstances of the instant case, we find that the delay was not sufficient to require the appellee's release. The obvious purpose of the preliminary commitment procedures of the Act is to prevent an individual from languishing in the asylum state's jail without judicial supervision, while the demanding state decides whether it will request his extradition. As the appellee was given a preliminary hearing at the time of the initial confinement, this case differs from both *Commonwealth v. McCaine*, supra, and *Commonwealth ex rel. Knowles v. Lester*, 456 Pa. 423, 321 A.2d 637 (1974), where no hearing was held for sixty-three and one hundred and forty-one days respectively. At appellee's preliminary hearing, the "30 day" hearing was scheduled for the thirty-second day, because the thirtieth day was a Sunday and the thirty-first day was Columbus Day. Furthermore, the appellee was aware of the hearing date from the time of the preliminary hearing, but did not object at that time, at the "30 day" hearing itself, or at any other time until the extradition hearing. Under these circumstances, the minimal delay in holding the "30 day" hearing does not constitute a sufficient basis to discharge the appellee.

The order granting the appellee's petition for writ of habeas corpus is reversed and extradition ordered.