385 A.2d 508

**COMMONWEALTH of Pennsylvania ex rel. Oscar Earl KELLY, Appellant,**

v.

**Louis J. AYTCH, Superintendent, Philadelphia County Prisons.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1976.

Decided April 13, 1978.

---

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Assistant District Attorney, and F. Emmett Fitzpatrick, District Attorney, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

On July 12, 1975, appellant, aged seventeen, was arrested in Philadelphia and charged with being a fugitive from Mississippi and Tennessee. On July 22, after a hearing pursuant to Section 15 of the Uniform Criminal Extradition Act, Act of July 8, 1941, P.L. 288, 19 P.S. § 191.15, Judge CODY concluded that appellant was the person wanted by the demanding states, and committed him to the county jail pending receipt of Governors' Warrants. On August 12 appellant filed a petition to transfer the case to Family Court; the petition alleged that appellant was a "child" within the definition of the Juvenile Act, Act of Dec. 6, 1972, P.L. 1464, No. 333, § 2, 11 P.S. § 50–102. On September 11 appellant's petition to transfer was denied, and the case was continued to October 10 because the Governors' Warrants were still outstanding. On September 23 the Governors' Warrants were lodged.

The hearing on October 10 was before Judge DOTY. The Commonwealth introduced into evidence the extradition papers and the testimony of one Clarence Russel Ashford, who identified appellant. Appellant offered no evidence but at the outset of the hearing again asserted that the case should be transferred to Family Court. Judge DOTY ordered appellant extradited but granted a writ of supersedeas pending disposition of this appeal.

I

Section 3 of the Juvenile Act, *supra*, 11 P.S. § 50–103, provides that the Family Court's jurisdiction

. . . shall apply exclusively to the following:

(1) Proceedings in which a child is alleged to be delinquent or deprived.

(2) Proceedings arising under sections 32 through 35 [of the Act].

(3) Transfers arising under section 7 [of the Act].

(4) Proceedings under the "Interstate Compact on Juveniles," section 731, act of June 13, 1967 (P.L. 31) . .

Appellant argues that Subsections 1, 3, and 4 apply here. We may summarily reject the argument that Subsection 1 applies, for at no stage in the extradition proceedings was appellant "alleged to be delinquent or deprived". Whether either Subsection 3 or 4 applies must be more carefully considered.

–A–

■ As will have been observed, Subsection 3 refers to Section 7 of the Act, *supra*, 11 P.S. § 50–303. Section 7 provides:

If it appears to the court *in a criminal proceeding other than murder, that the defendant is a child, this act shall immediately become applicable*, and the judge shall forthwith halt further criminal proceedings, and, where appropriate, transfer the case to the Family Court Division or to a judge of the court assigned to conduct juvenile hearings

. . . .

(Emphasis added.)

Appellant first argues that the extradition proceeding here is "a criminal proceeding other than murder" because he is not charged in Pennsylvania with the crime of murder but with the crime of being a fugitive. The point is well taken. In *Commonwealth ex rel. Marshall v. Gedney*, 456 Pa. 570, 321 A.2d 641 (1974), our Supreme Court held that an appeal from the grant or denial of a petition for writ of habeas corpus must be to this court, even when the crime charged in the demanding state is felonious homicide, because:

[T]he inquiry in extradition appeals is narrow; it includes no consideration of the substance of the crime charged in the demanding state. . . . The scope of the asylum state's inquest is the same whether the alleged fugitive is charged with simple assault or murder in the first degree. *Thus in Pennsylvania appellant is not charged with felonious homicide, but with being a fugitive.*

*Id.,* 456 Pa. at 572, 321 A.2d at 642 (citations omitted) (emphasis added).

■ Appellant next argues that he is a "child" within the definition in Section 2 of the Act, *supra,* 11 P.S. § 50–102, which is:

As used in this act:

(1) "Child" means an individual who is: (i) under the age of eighteen years; or (ii) under the age of twenty-one years who committed an act of delinquency before reaching the age of eighteen years.

(2) "Delinquent act" means an act designated a crime under the law of this State, or of another state if the act occurred in that state, or under Federal law, or under local ordinances; . . . *"Delinquent act" shall not include the crime of murder* nor shall it include summary offenses unless the child fails to pay a fine levied thereunder, in which event notice of such fact shall be certified to the court.

(Emphasis added.)

On August 12, when he filed his petition to transfer, appellant was under eighteen, but on October 10, when his extradition hearing was held, he was over eighteen. Specifically, appellant became eighteen on October 9, which was 2 days before the allowable period of commitment would expire. Section 17 of the Uniform Criminal Extradition Act, *supra,* 19 P.S. § 191.17. Appellant's status as a "child" therefore changed. When he filed his petition to transfer, on August 12, he was a "child" within § 50–102(1)(i) because he was under eighteen; but by the time of his hearing, on October 10, he was no longer a "child" within that subsection because he was over eighteen. The question, therefore,

is whether on October 10 appellant was a "child" within § 50–102(1)(ii) in that he had "committed an act of delinquency before reaching the age of eighteen years." [1]

It will have been observed that "an act of delinquency" is defined in § 50–102(2) as "an act designated a crime under the law of this state," but "not includ[ing] the crime of murder." Accordingly, the fact that appellant is charged with murder in Mississippi is irrelevant, and he cannot be said to have committed an "act of delinquency" unless he committed "an act designated a crime [other than murder] under the law of this state."

Appellant is charged with being a fugitive in this State. The status of being a fugitive accrued to appellant before he became eighteen. However, he continues to have his status only so long as he remains in this State while being sought by the authorities of another State; once he leaves, he is no longer a fugitive under our laws. This points out the peculiar nature of the "crime" of being a fugitive. It is not a crime under our Crimes Code. Although the Uniform Criminal Extradition Act confers on the Governor of Pennsylvania the authority to detain a person charged by another state with a crime,[2] the period of detention is specifically regulated and limited. Sections 13–17 of the Extradition Act, *supra*, 19 P.S. §§ 191.13–191.17. Further the purpose of

1. The continuance of the case until the day after appellant's eighteenth birthday appears more than coincidence. However, appellant does not argue bad faith on the part of the Commonwealth. In any event, the argument could not help appellant. Even if we were to hold that the continuance should be ignored, still, the issue before us is jurisdictional and so must turn on appellant's present status, that is, on whether he is *now* a "child" within § 50–102(1), which he is not, unless he is *now* within § 50–102(1)(ii).

2. The Act provides:
    Subject to the provisions of this act, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this State.
    Act of July 8, 1941, P.L. 288, § 2, 19 P.S. § 191.2.

the detention is merely to allow the other State the opportunity to present a Governor's warrant and requisition papers; it is not to punish the person for being a fugitive.

Since appellant has not committed "an act designated a crime under the law of this state," he is not a "child" within Section 2 of the Juvenile Act, *supra*, 11 P.S. § 50–102; he is therefore not a "child" within Section 7 of the Juvenile Act, 11 P.S. § 50–303, and Subsection 3 of Section 3 of the Juvenile Act, 11 P.S. § 50–103(3), which confers exclusive jurisdiction in the Family Court of "[t]ransfers arising under Section 7," does not apply.

– B–

■ It will be recalled that Subsection 4 of Section 3 of the Juvenile Act, *supra*, 11 P.S. § 50–103(4), confers exclusive jurisdiction on the Family Court of "[p]roceedings under the 'Interstate Compact on Juveniles,' Section 731, Act of June 13, 1967 (P.L. 31), [62 P.S. § 731] . . . ." Section 2 of the Compact, added 1973, July 25, No. 49, is an amendment to the original compact designed to provide for the rendition of juveniles alleged to be delinquent. It provides:

(a) This amendment shall provide additional remedies, and shall be binding only as among and between those party states which specifically execute the same.

(b) All provisions and procedures of Articles V and VI of the Interstate Compact on Juveniles shall be construed to apply to any juvenile charged with being a delinquent by reason of a violation of any criminal law. Any juvenile, charged with being a delinquent by reason of violating any criminal law shall be returned to the requesting state upon a requisition to the state where the juvenile may be found. . . .

Mississippi has "specifically execute[d]" Section 2. However, there were no proceedings conducted in Mississippi in which appellant was "charged with being a delinquent by reason of violation of any criminal law." Appellant was charged with murder in Mississippi and was subsequently indicted. Section 2 is therefore not applicable here, and Subsection 4 of Section 3 of the Juvenile Act does not apply.

Accordingly we hold that the lower court properly denied appellant's petition to transfer to Family Court.

## II

Appellant also argues that his extradition is improper because: his presence in the demanding state at the time of the commission of the crime was not shown; the hearing judge improperly limited cross-examination of the Commonwealth's witness; and the evidence was insufficient to show that he was the person named in the requisition papers.

We have consistently stated:

Extradition will be ordered if (1) the subject of the extradition is charged with a crime in the demanding state; (2) the subject of extradition is a fugitive from the demanding state; (3) the subject of the extradition was present in the demanding state at the time of the commission of the crime; and (4) the requisition papers are in order. *Commonwealth ex rel. Coades v. Gable*, 437 Pa. 553, 264 A.2d 716 (1970); *Commonwealth ex rel. Colcough v. Aytch*, 227 Pa.Super. 527, 323 A.2d 359 (1974). Necessarily underlying these proofs is the Commonwealth's burden to establish that the person being extradited is the person demanded. *Commonwealth ex rel. Walker v. Hendrick*, 434 Pa. 175, 253 A.2d 95 (1969). "In every extradition proceeding, *the relator has an absolute right to require that his identity as the person named in the Extradition Requisition be established and proved by the weight of credible evidence.*" *Commonwealth ex rel. Edgar v. Davis*, 425 Pa. 133, 136, 228 A.2d 742, 744 (1967); *Commonwealth ex rel. McGowan v. Aytch*, 233 Pa.Super. 66, 69–70, 334 A.2d 750, 752 (emphasis added) (1975).[3]

**3.** We went on to state in *Commonwealth ex rel. Edgar v. Davis, supra:*

Section 20 of the Extradition Act provides:
"The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into . . . in any proceeding after the demand for extradition accompanied by a charge of crime in legal form . . . shall have been presented to the Governor, *except as it may be involved in identifying the person held as the*

The demand for appellant's extradition was accompanied by a copy of an indictment alleging that on June 20, 1975, in the County of DeSoto, in the State of Mississippi, one Clarence Russel Ashford and one Oscar Earl Kelly murdered Dr. Omar Robinson, Junior. At the extradition hearing Ashford positively identified appellant in the courtroom as an individual whom he had known for five or six years as Oscar Earl Kelly (N.T. 13); Ashford further testified that he was with appellant in Mississippi at the time the crime took place, which he testified was shortly after midnight on June 20 (N.T. 14–15, 19–20, 22, 59–60).[4]

██ Appellant argues that since Ashford's testimony placed him in Mississippi on June 21, not June 20, the Commonwealth has not shown that he "was present in the demanding state at the time of the commission of the crime," *Commonwealth ex rel. McGowan v. Aytch, supra.* Technically appellant's argument is correct because the indictment charges him and Ashford with the murder of Dr. Robinson in Mississippi on June 20. Ashford's testimony indicates that they did not reach Mississippi until after midnight, that is, on June 21, and that therefore the subsequent murder of Dr. Robinson also took place on June 21. If we were conducting a trial to determine appellant's guilt or innocence, we might find the variance in evidence from the date alleged in the indictment sufficient to require amendment of the indictment or a new trial, *Commonwealth v. Mitchell,* 234 Pa.Super. 21, 30–31, 335 A.2d 521, 525 (1975), but this is an extradition proceeding and the evidence of appellant's presence in the demanding state is sufficient if it

*person charged with the crime." Id.,* 425 Pa. at 136, 228 A.2d at 744.
Thus it is clear that identification of the relator is always a relevant issue at an extradition hearing.

4. Ashford testified that appellant accompanied by Dr. Robinson picked him up in Dr. Robinson's car at his house in Memphis, Tennessee "about twelve at night." (N.T. 22) They drove into Mississippi, which took "about fifteen, twenty minutes" (N.T. 15), and remained in Mississippi "about forty, forty-five minutes." (*Id.*) Further Ashford testified that he and appellant were always together during the time they were in Mississippi (*id.*) and that he was present when Dr. Robinson was killed (N.T. 19–20).

provides a reasonable basis for the hearing judge's finding. Thus we noted in *Commonwealth v. Kulp*, 225 Pa.Super. 345, 348 n. 2, 310 A.2d 399, 401 n. 2 (1973):

> "Competent evidence to establish reasonable ground is not necessarily evidence sufficient to convict, nor only such as can pass technical rules governing the admissibility of evidence in criminal trials." *U. S. v. Flood*, 374 F.2d 554, 557 (2d Cir. 1967).

Here the evidence of appellant's presence in Mississippi shortly after midnight on June 20 provided a reasonable basis for the hearing judge's finding that appellant was present in the demanding state at the time of the alleged murder. *See Commonwealth v. Kulp, supra.* Of course, this conclusion assumes that the judge was entitled to find that appellant was the Oscar Earl Kelly named in the indictment and requisition papers. Whether the judge was so entitled requires consideration of appellant's remaining two arguments.

Appellant's argument that the evidence was insufficient to identify him as the person named in the requisition papers is dependent upon his argument that the hearing judge improperly limited cross-examination of the Commonwealth's sole witness, Clarence Russel Ashford.

In *Commonwealth ex rel. Pacewicz v. Turley*, 399 Pa. 458, 160 A.2d 685 (1960), the relator challenged the hearing judge's conduct in limiting cross-examination of the prosecutor/victim, one Vallely. On direct examination Vallely testified that

> he had seen [relator] on three occasions and that relator had come to his place of employment in New York on October 29, 1956—the date of the commission of the alleged crimes—and had been at his hotel room on two prior occasions.

*Id.*, 399 Pa. at 461, 160 A.2d at 687.

The hearing judge cut short cross-examination of Vallely after the relator's attorney had asked twenty-nine questions. Our Supreme Court stated:

Up to that point Vallely had clearly and unequivocally identified relator as having been in the State of New York on October 29, 1956, the time of his alleged commission of the crime charged against him there. When the hearing judge put an end to the cross-examination, relator's counsel was attempting to discredit Vallely's *original* identification of relator by photographs in New York. The identification of relator as the person who had been in New York when the crime was committed was complete and what relator's counsel was then attempting to do was discredit Vallely's testimony, a matter for the courts of the demanding state rather than the courts of the asylum state. The issue before Judge Hagan was whether relator was in the State of New York when the alleged crimes were committed and not whether relator was guilty or innocent of the commission of such crimes. The hearing judge very properly cut short relator's counsel's cross-examination.

*Id.,* 399 Pa. at 464, 160 A.2d 688 (emphasis added).

■ Here the hearing judge cut short cross-examination of Ashford at the following point:

BY MR. LIEBERMAN [appellant's counsel]:

Q. You are testifying here today for the State of Pennsylvania at the behest of the State of Mississippi in an extradition proceeding, are you not?

MR. ROSENBERG [district attorney]: Objection.

THE COURT: Overruled.

THE WITNESS: Yes, sir.

BY MR. LIEBERMAN:

Q. And what consideration, Mr. Ashford, has been given to you for your testimony here today?

MR. ROSENBERG: Objection.

THE COURT: I'll sustain that.

BY MR. LIEBERMAN:

Q. Mr. Ashford, you know that the crime if murder is a capital crime in the State of Mississippi, is it not?

MR. ROSENBERG: Objection.

THE COURT: I really don't think that's admissible.

MR. LIEBERMAN: His credibility, your Honor, is an issue. Here is a man who is charged with the same crime, *and he is coming and trying to implicate someone else. Obviously his motives for testifying are an issue in this proceedings.*

THE COURT: *I'll sustain the objection. Again I would remind you that we are not going to try the case here. These issues I think would be quite relevant down in the demanding State.*

MR. LIEBERMAN: *The credibility of this witness, your Honor, the credibility of any witness is always an issue. And I fail to see —*

THE COURT: *Well, only in a very limited way.*
N.T. 56–58 (emphasis added).

This ruling was correct. As in *Commonwealth ex rel. Pacewicz v. Turley, supra,* when the hearing judge put an end to the cross-examination counsel was attempting to discredit the witness with respect to an issue that would have to be, and could only be, resolved in the demanding State. Nothing here suggests that Ashford's identification of appellant was not credible; Ashford had testified that he had known appellant for five to six years before the alleged crime, and that he and appellant were together when the crime was committed. Appellant never denied these assertions. This uncontradicted testimony was sufficient to allow the hearing judge to conclude that Ashford was a credible witness *for the purpose of identifying appellant* as the Oscar Earl Kelly named in the indictment. Whether because of improper motivation or some other reason Ashford's testimony regarding the events leading up to the crime is credible was a question not relevant to the proceeding. *See* Section 20 of the Extradition Act, n. 3, *supra.*

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.