398 A.2d 1060

COMMONWEALTH of Pennsylvania

v.

William M. ROWE, Appellant.

COMMONWEALTH of Pennsylvania

v.

Frank W. SAXON, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 6, 1977.

Decided March 2, 1979.

David B. Keeffe, Sayre, for appellant William M. Rowe at No. 2061.

Leonard J. Frawley, Towanda, for appellant Frank W. Saxon at No. 2149.

W. Marshall Dawsey, District Attorney, Towanda, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

These appeals arise from the orders of the lower court denying petitions for writs of habeas corpus in an extradition proceeding, and ordering appellants to be remanded to the custody of the appropriate authorities of the State of New York. For the reasons stated herein, we affirm.

The facts pertinent to our determination are as follows. On February 6, 1977, the M & M Hot Dog Stand in Elmira, New York, was burglarized, and its safe carried away. Two weeks subsequent to the incident, Joseph Philippi submitted an affidavit to the Elmira police in which he confessed to being a participant in the crime, and implicated William M. Rowe, Jr. and Frank W. Saxon. On March 14, 1977, appellants were arrested in Pennsylvania pursuant to a warrant charging them with being fugitives from justice. Following arraignment, Rowe was released on bail on March 15, with Saxon being similarly released on March 17. This bail has been continued by the court below pending the outcome of this appeal.

On May 16, 1977, appellants were re-arrested pursuant to a warrant of arrest issued by the Governor of Pennsylvania

on May 6, 1977, in response to a demand by the State of New York for the surrender and extradition of William M. Rowe and Frank Saxon. Writs of habeas corpus were filed by both appellants and were argued before the court below on May 18 and May 25, 1977. The court determined that the requirements of the Uniform Criminal Extradition Act[1] had been satisfied and denied the petitions.

On appeal, the prime contention of both appellants is that the Commonwealth failed to establish that they were the two individuals named in the New York extradition papers. With this we cannot agree.

It has often been repeated that extradition will be ordered if: (1) the subject of extradition is charged with a crime in the demanding state; (2) the subject of extradition is a fugitive from the demanding state; (3) the subject of extradition was present in the demanding state at the time of the commission of the crime; and (4) the requisition papers are in order. *Commonwealth ex rel. Coades v. Gable*, 437 Pa. 553, 264 A.2d 716 (1970); *Commonwealth ex rel. Kelly v. Aytch*, 254 Pa.Super. 28, 385 A.2d 508 (1978); *Commonwealth ex rel. Colcough v. Aytch*, 227 Pa.Super. 527, 323 A.2d 359 (1974). As a necessary pre-requisite to extradition, the Commonwealth must establish that the person being extradited is the person demanded. *Commonwealth ex rel. Walker v. Hendrick*, 434 Pa. 175, 253 A.2d 95 (1969); *Commonwealth ex rel. Kelly v. Aytch, supra*. As has been emphasized, in every extradition proceeding "the relator has an absolute right to require that his identity as the person named in the Extradition Requisition be established and proved by the weight of credible evidence." *Commonwealth ex rel. Edgar v. Davis*, 425 Pa. 133, 136, 228 A.2d 742, 744 (1967). Because the guilt or innocence of the accused is not in question, however, *Commonwealth ex rel. Edgar v. Davis, supra*, the Commonwealth's burden is not measured against the "beyond a reasonable doubt" standard, but merely against the "preponderance of the evidence" standard.

1. Act of July 8, 1941, P.L. 288, § 1 *et seq.*, 19 P.S. § 191.1 *et seq.*

"[C]ompetent evidence to establish reasonable ground is not necessarily evidence sufficient to convict, nor only such as can pass technical rules governing the admissibility of evidence in criminal trials." *United States ex rel. Vitiello v. Flood*, 374 F.2d 554, 557 (2d Cir. 1967), *quoting United States ex rel. Klein v. Mulligan*, 50 F.2d 687, 688 (2d Cir. 1931).

Instantly, the hearing yielded the following evidence germane to the issue of identity. At the May 18 session, Mr. Philippi testified that he had originally met Rowe in Towanda, Pennsylvania. When asked to identify him in court, however, the witness pointed to a person other than appellant seated at counsel's table. The prosecuting attorney pleaded surprise, stated at sidebar that the witness had correctly identified Rowe prior to entering the courtroom, and requested permission to impeach Mr. Philippi. Thereafter, the latter stated that at the time he submitted his affidavit to the Elmira police, he was intoxicated and could recall few of the details of the meeting. Confronted with this testimony, the prosecuting attorney was granted a continuance.

At the next hearing, Detective Sherril Miller of the Elmira Police Department described the details of Mr. Philippi's interrogation, and recited the contents of the latter's affidavit to the Elmira police. In that document, Mr. Philippi stated in pertinent part that on the date of the burglary, he was a passenger in a pickup truck driven by Frank Saxon and accompanied by William "Butch" Rowe. While driving toward Elmira, the trio picked up a pair of hitchhikers apparently known to them, Tony Potter and Jim Mulcahy, both from Towanda. The group proceeded to the M & M Hot Dog Stand where Rowe, Saxon, and Philippi entered the establishment and removed the safe. Subsequently, they opened the safe, divided the contained money three ways, disposed of the safe, and drove back to Towanda. The empty safe was later recovered in Pennsylvania as a result of a description provided by Mr. Philippi.

Officer Miller next recited from the statement of one of the hitchhikers, Mr. Mulcahy.[2] In the affidavit, Mr. Mulcahy stated that during the early morning hours of February 6, 1977, he and Anthony Potter were hitchhiking on Route 17 from Nichols, New York, and procured a ride in a pickup truck with Butch Rowe, Joe Philippi, and Frank Saxon (Mr. Mulcahy further identified Butch Rowe as William Murray Rowe). They then drove to Elmira, where, paralleling Mr. Philippi's account, Rowe, Philippi, and Saxon entered a building and removed the safe. After opening and disposing of the safe, the three drove the two hitchhikers back to Towanda, at which time Rowe admonished Mr. Mulcahy and Mr. Potter to remain silent concerning the events they had witnessed.

Finally, Dwayne McCleary, Chief Probation Officer of Bardford County, testified that he knew both appellants and identified them in court. He also stated that he commonly knew Rowe as "Butch."

In an attempt to refute the Commonwealth's evidence, appellants placed Robert Smith on the stand. Mr. Smith testified that he resided in Towanda and was acquainted with both Rowe (whom he referred to as Butch) and Saxon. According to this witness, both appellants were present at a party held at Rowe's home in Wysox, Pennsylvania, during the night and early morning on which the Elmira burglary was perpetrated.

Considering the totality of the testimony, we believe that the Commonwealth presented sufficient credible evidence to sustain a finding that appellants were the individuals named in the extradition papers and that both were in New York during the time of the crime. Mr. Philippi's affidavit indicated that a William "Butch" Rowe was involved in the burglary, and that they returned to Towanda following the crime. Testimony was adduced that appellant is known as Butch. Mr. Mulcahy also identified the burglar

2. The Commonwealth elected not to call Mr. Mulcahy to the stand notwithstanding the fact that he was within the immediate vicinity of the courtroom.

as "Butch" Rowe. While the concurrence of legal names is not alone sufficient to sustain the Commonwealth's burden, the identical nickname of the two individuals as here presented is strong evidence of identity. Although Mr. Philippi failed to identify Rowe in court, his statement given to the Elmira police, corroborated in part by the discovery of the safe in the area designated by him, is persuasive.

It is true that in cases of this type identity is typically proven by the victim's in-court identification of the relator, e. g., Commonwealth ex rel. Raucci v. Price, 409 Pa. 90, 185 A.2d 523 (1962), or by a police officer present at some preliminary stage of arrest who had observed and/or heard the victim identify the relator, e. g., Commonwealth v. Murphy, 236 Pa.Super. 37, 344 A.2d 662 (1975), but there is nothing inherently infirm in demonstrating identity by the circumstantial means employed here. The evidence points to Rowe returning to Towanda following an excursion to New York. While this may not be clear beyond a reasonable doubt, we are not bound by that weighty standard. It must be constantly recalled that we are not dealing with the ultimate matter of guilt or innocence. Appellants will have ample opportunity to attack the testimony of the witnesses in more detail, and with the benefit of a more stringent standard of proof, at trial.

As to Saxon, while he lacks the distinctive nickname of Rowe, the statements of Mr. Philippi and Mr. Mulcahy are sufficient to tie him to the individual named in the extradition papers. Indeed, it is instructive that appellant's own witness placed Saxon at a party given by Rowe, thus indicating the possibility of finding both appellants together. Similarly, it is probative that both were connected with the burglary. The fact that he returned to Towanda in the company of Rowe is certainly sufficient, taken with the remaining evidence, to sustain a finding of identity and presence in New York.

Appellants' remaining contentions lack merit. They argue first that the affidavit of Mr. Philippi should be regarded as a prior inconsistent statement in light of his courtroom

testimony. Thus, it should have been admitted for the limited purpose of impeaching the testimony of the witness rather than as substantive evidence. We cannot agree with this reasoning.

It has previously been held that in an extradition hearing, not only is hearsay admissible, but evidence secured in violation of the relator's constitutional rights, or evidence otherwise illegally seized, is admissible. *Commonwealth v. Kulp*, 225 Pa.Super. 345, 310 A.2d 399 (1973). "Given the summary nature of interstate rendition proceedings, an accused is not entitled to receive the full panoply of procedural protections normally accorded to a defendant in a criminal trial. *United States ex rel. Vitiello v. Flood*, 374 F.2d 554, 557 (2d Cir. 1967); *Luker v. Koch*, 176 Colo. 75, 489 P.2d 191 (1971); *Commonwealth v. Glavin*, 354 Mass. 69, 235 N.E.2d 547 (1968)." *Commonwealth v. Kulp, supra*, 225 Pa.Super. at 348, 310 A.2d at 400. It is clear that if these violations of normal evidentiary practice may be countenanced, then a fortiori the admission of the instant testimony as substantive evidence is permissible. In accordance with our observation in *Kulp*, however, it must be said that the source and manner of such testimony will have a bearing on the weight accorded to it by the court.

Appellant Rowe next contends that the warrant should be quashed because he was re-arrested in contravention of the tenets propounded in *Commonwealth ex rel. Knowles v. Lester*, 456 Pa. 423, 321 A.2d 637 (1974). We disagree.

Section 15 of the Uniform Criminal Extradition Act (19 P.S. § 191.15) provides that when the suspect is initially arrested, the judge must commit him to jail or admit him to bail for such time not exceeding thirty days. Section 17 (19 P.S. § 191.17) states that if the accused is not re-arrested within that time, the judge may discharge him, recommit him for a further period not to exceed sixty days, or again take bail for a period not in excess of sixty days. Instantly, no hearing was held at the expiration of the thirty day

period subsequent to Rowe's arrest. Nevertheless, we need not decide whether the continuance of bail without a hearing, as opposed to the continuance of incarceration without a hearing, contravenes the statutory mandate. As was stated in *Commonwealth ex rel. Myers v. Case*, 250 Pa.Super. 242, 378 A.2d 917 (1977):

"Absent a violation of the rule of *Commonwealth ex rel. Knowles v. Lester*, 456 Pa. 423, 321 A.2d 637 (1974), habeas corpus relief is warranted only when sought after the expiration of the prescribed period (whether thirty or, if extended, ninety days) *and* before a governor's warrant is executed. *Cohen v. Warden*, 252 F.Supp. 666 (D.C.Md. 1966); *In re Colasanti*, 104 N.J.Super. 122, 249 A.2d 1 (1969) (*per curiam*); *People ex rel. Gummow v. Larsen*, 35 Ill.2d 280, 220 N.E.2d 165 (1966); *People ex rel. Green v. Nenna*, 53 Misc.2d 525, 279 N.Y.S.2d 324 (Sup.Ct.1965), *aff'd*, 24 A.D.2d 936, 264 N.Y.S.2d 211 (Sup.Ct.App.Div. 1965), *aff'd*, 17 N.Y.2d 815, 271 N.Y.S.2d 267, 218 N.E.2d 311 (1966)." *Id.*, 250 Pa.Super. at 249, 378 A.2d at 920. (Spaeth, J. concurring) (emphasis in original).

*See also Commonwealth ex rel. Stile v. Florida*, 235 Pa.Super. 10, 14 n.5, 340 A.2d 534, 536 n.5 (1975). Because *Knowles* involved an incarceration of 141 days, a period far in excess of the ninety day maximum, it is radically different from the instant situation.

■ Finally, appellant Saxon argues that because they were not introduced into evidence, the Commonwealth failed to establish that the requisition papers were in compliance with applicable standards. This is belied by the record which includes the necessary papers. Following an independent review, we agree with the court below that they are sufficient.

The orders of the court below are therefore affirmed.

CERCONE, P. J., concurs in the result.

JACOBS, former President Judge, WATKINS, former President Judge, and HOFFMAN, J., did not participate in the consideration or decision of this case.