416 A.2d 1086

**COMMONWEALTH of Pennsylvania ex rel. Alfred PIZZO**

**v.**

**Louis AYTCH, Superintendent Philadelphia County Prison.**

**Appeal of Alfred PIZZO.**

**COMMONWEALTH of Pennsylvania ex rel. Vincent FRANCESE**

**v.**

**Louis AYTCH, Superintendent Philadelphia County Prison.**

**Appeal of Vincent FRANCESE.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1978.

Filed Dec. 21, 1979.

J. Shane Creamer, Philadelphia, for appellants.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for appellee.

Before PRICE, HESTER and HOFFMAN, JJ.

PRICE, Judge:

These appeals arise from the orders of the court of common pleas denying petitions for writs of habeas corpus in an extradition proceeding, and ordering appellants to be remanded to the custody of the appropriate New Jersey authorities. For the reasons stated herein, we affirm.

On February 1, 1977, Detective Edward O'Shea of the Philadelphia Police department received information from Detective Forsyth, a New Jersey police officer, that Cannataro's Jewelry Store in Gloucester Township, New Jersey, had just been robbed. Detective Forsyth informed Detective O'Shea that the owner of the store, Mr. Cannataro, identified the robbers as Jimmy Boy Colozzi, Freddie, and Vince. Mr. Cannataro also provided a physical description of the suspects and of the clothes they were wearing at the time of the robbery. Detective O'Shea indicated to Detective Forsyth that he knew Mr. Colozzi by sight and would attempt to locate him and the other suspects.

Obtaining Mr. Colozzi's home address, Detective O'Shea, accompanied by other officers, staked out the suspect's premises and a local bar which he was know to frequent. Shortly thereafter, the detective observed Mr. Colozzi and two other men, all of whom fit the description supplied by

Detective Forsyth, walking down 7th Street. All three were arrested, and complaints sworn out against them by Detective Forsyth.

On April 18, 1977, the Honorable Milton V. Shapp, then Governor of Pennsylvania, executed a Governor's Warrant for the arrest of the above individuals pursuant to a formal request by the Governor of New Jersey.[1] Appellants were arrested on the strength of these warrants on June 8, 1977. They subsequently filed writs of habeas corpus, and hearings were held thereon on August 9, and 16 of 1977 before the Honorable Edward J. Blake. At the hearing, the sole witness called for the Commonwealth was Detective O'Shea, who detailed the circumstances surrounding appellants' initial arrest as described above. He also identified appellants as two of the three individuals he arrested on February 1, 1977, in Philadelphia. The only other evidence introduced by the Commonwealth was the Governor's Warrants and accompanying documents. Included in the latter were the sworn affidavits of Ernest Cannataro identifying appellants as the miscreants, together with pictures of each.[2] Appel-

1. The Governor's Warrant charged appellants with, *inter alia*, robbery, armed robbery, assault with intent to rob, armed entering without breaking, and two counts of extortion.

2. Mr. Cannataro's affidavit with respect to Vincent Francese is as follows:

"ERNEST CANNATARO, of full age, upon his oath deposes and says that he is a victim of the charges placed against the defendant, VINCENT FRANCESE.

On February 1, 1977, deponent owned Cannataro's Fine Jewelry Shop, Glen Oaks Mall, Gloucester Township, New Jersey (Camden County), at which time, my store and myself were robbed at gun point, and I was tied up by three men who I knew as Jimmy Boy Colozzi, Vince and Freddie. Later that same day I went to the Philadelphia Police Department, Pennsylvania—Major Crime Unit, where Jimmy Boy Colozzi, Vince and Freddie had been taken by the Philadelphia Police and identified them as the men who robbed and attacked me.

Deponent further states that he identifies the attached photograph (# 307459), dated February 2nd, 1977, as a photograph of the defendant, VINCENT FRANCESE who on February 1st, 1977 robbed and attacked him, at his Jewelry Shop in Glen Oaks Mall, Gloucester Township (Camden County), New Jersey.

lants presented no evidence, and the petitions were denied on September 14, 1977.

Appellants[3] now contend that the Commonwealth failed to muster sufficient credible evidence to prove either that they were in New Jersey at the time of the alleged crime, or that they were indeed the individuals named in the requisition documents. We disagree.

This court has recently reiterated the requirements of an extradition proceeding:

"It has often been repeated that extradition will be ordered if: (1) the subject of extradition is charged with a crime in the demanding state; (2) the subject of extradition is a fugitive from the demanding state; (3) the subject of extradition was present in the demanding state at the time of the commission of the crime; and (4) the requisition papers are in order. *Commonwealth ex rel. Coades v. Gable*, 437 Pa. 553, 264 A.2d 716 (1970); *Commonwealth ex rel. Kelly v. Aytch*, 254 Pa.Super. 28, 385 A.2d 508 (1978); *Commonwealth ex rel. Colcough v. Aytch*, 227 Pa.Super. 527, 323 A.2d 359 (1974). As a necessary pre-requisite to extradition, the Commonwealth must establish that the person being extradited is the person demanded. *Commonwealth ex rel. Walker v. Hendrick*, 434 Pa. 175, 253 A.2d 95 (1969); *Commonwealth ex rel. Kelly v. Aytch, supra.* As has been emphasized, in every extradition proceeding 'the relator has an absolute right to require that his identity as the person named in the Extradition Requisition be established and proved by the weight of credible evidence.' *Commonwealth ex rel. Edgar v. Davis*, 425 Pa. 133, 136, 288 A.2d 742, 744 (1967). Because the guilt or innocence of the accused is not in question, however, *Commonwealth ex rel. Edgar v. Davis*,

Deponent further states that this affidavit is made in good faith for the sole purpose of identifying the accused and will not be used for any other purpose whatsoever."
The affidavit naming Alfred Pizzo as another attacker was identical save for the substitution of names.

3. James Colozzi's appeal to this court at 2461 October Term, 1977, was subsequently discontinued.

*supra,* the Commonwealth's burden is not measured against the 'beyond a reasonable doubt' standard, but merely against the 'preponderance of the evidence' standard. '[C]ompetent evidence to establish reasonable ground is not necessarily evidence sufficient to convict, nor only such as can pass technical rules governing the admissibility of evidence in criminal trials.' *United States ex rel. Vitiello v. Flood,* 374 F.2d 554, 557 (2d Cir. 1967), *quoting United States ex rel. Klein v. Mulligan,* 50 F.2d 687, 688 (2d Cir. 1931)." *Commonwealth v. Rowe,* 264 Pa.Super. 67, 71, 398 A.2d 1060, 1061–62 (1979).

█ Instantly, appellants contend that not only were their identities and locations within New Jersey not conclusively established, but that the primary evidence employed by the court, the affidavits of Mr. Cannataro, were in fact inadmissible hearsay. Addressing the last of these arguments, we cannot agree that by considering the affidavits, the court deprived appellants of any supposed due process right to confront and cross-examine the affiant. It is well recognized that extradition proceedings stand on a different footing from a normal criminal trial. Wigmore classifies them with other special or statutory proceedings of a summary, non-criminal nature in which the strict rules of evidence known to the common law are not applicable, *e.g.* grand jury, disbarment, and administrative proceedings.

"For the same reasons of principle, extradition proceedings are not governed in strictness by the jury-trial rules of Evidence. Moreover, here the additional reasons obtains that the evidence is brought from outside the jurisdiction, and the procurement of evidence is thus likely to be hampered by the lack of power or practicability, as well as by the possible differences of law in another system." I Wigmore, Evidence 24 (3d ed. 1940) (footnote omitted).

This court has itself noted that "[g]iven the summary nature of interstate rendition proceedings, an accused is not entitled to receive the full panoply of procedural protections normally accorded to a defendant in a criminal trial. *United States ex rel. Vitiello v. Flood,* 374 F.2d 554, 557 (2d Cir.

1967); *Luker v. Koch,* 176 Colo. 75, 489 P.2d 191 (1971); *Commonwealth v. Glavin,* 354 Mass. 69, 235 N.E.2d 547 (1968)." *Commonwealth v. Kulp,* 225 Pa.Super. 345, 348, 310 A.2d 399, 400 (1973). Consequently, not only have we previously sanctioned the use of hearsay in extradition hearings, *Commonwealth v. Rowe, supra;* *Commonwealth v. Murphy,* 236 Pa.Super. 37, 344 A.2d 662 (1975); *Commonwealth ex rel. Reis v. Aytch,* 225 Pa.Super. 315, 310 A.2d 681 (1973), but of evidence secured in violation of the relator's constitutional rights. *Commonwealth v. Kulp, supra.* In *Murphy,* for instance, the defendant was arrested and charged with being a fugitive from Virginia. At the extradition hearing, an agent of the local Virginia police department testified that the defendant was the individual he had arrested in Virginia, and that in his presence, the complainant had identified the defendant as the perpetrator of the burglary. This court subsequently affirmed the denial of the habeas corpus petition based on this evidence.

Appellants, however, would have us draw a distinction between a *Murphy* type situation, *i.e.,* one in which an individual testifies that he had previously seen or heard the relator identified by another, and a situation in which a mere affidavit is read into the record. While it is true that the former is the more typical mode of establishing the identity of the relator, there is nothing inherently infirm in demonstrating identity by the means employed here. In *Rowe,* the Commonwealth attempted to demonstrate that the relators had been in Elmira, New York, at the time of a robbery there, by introducing the affidavit of a hitchhiker. Read into the record by a member of the Elmira Police Department, the affidavit stated that the affiant had been picked up by the relators, taken to Elmira, and there witnessed a robbery. In affirming the order of extradition, we held the admission of this affidavit permissible, notwithstanding the fact that the affiant was within the immediate vicinity of the courtroom. *Commonwealth v. Rowe, supra,* 264 Pa.Super. at 72 n.2, 398 A.2d at 1062 n.2.

Other jurisdictions have reached this same result. In *Sumner v. Lovellette*, 253 Ind. 675, 256 N.E.2d 681 (1970), an affiant swore that the relator had been in Tennessee and had defrauded her of $6,000. Attached to the affidavit was a picture of the relator which she had identified as the miscreant. The relator contended that he was denied the right to confront and cross-examine the affiant. The Indiana Supreme Court, in affirming the hearing court's denial of the relator's habeas corpus petition, reaffirmed that normal rules of evidence do not apply in extradition proceedings, and that when the relator was returned to the demanding state for trial he would have an opportunity to confront his accusers.

Similarly, in *Ex Parte O'Connor*, 169 Tex.Cr.R. 579, 336 S.W.2d 152 (1960), the relator in an extradition proceeding raised the issue of identity. State's counsel then sent a picture of the accused to the demanding state. A detective in that state swore out an affidavit that the photograph was that of the man named in the extradition warrant. The trial judge deemed this sufficient to reject the relator's testimony and affirm his extradition. *See also United States ex rel. Vitiello v. Flood, supra; United States ex rel. Austin v. Williams*, 12 F.2d 66 (5th Cir. 1926); *Ex Parte Martinez*, Tex.Cr., 530 S.W.2d 578 (1975); *Notter v. Beasley*, 240 Ind. 631, 166 N.E.2d 643 (1960).

Consequently, we fail to perceive any legal distinction between hearsay which enters the record as part of an affidavit or on the testimony of a witness. If and when appellant is tried for the crime charged in New Jersey, he will be constitutionally entitled to confront the witnesses there who seek to identify him. In the interim, when the issue of guilt or innocence is not in question, such a right is not applicable.

Having concluded that the affidavits were properly considered, we must now decide whether the whole of the proffered testimony was sufficient to identify appellants as those individuals named in the indictment. After a careful review of the record, we conclude that sufficient evidence was indeed adduced.

First, it has always been held that if the extradition papers are in order, the allegations contained therein must be accepted as prima facie true. *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa.Super. 527, 323 A.2d 359 (1974); *Commonwealth v. Allen,* 224 Pa.Super. 157, 303 A.2d 54 (1973); *Commonwealth ex rel. Edgar v. Davis, supra.* The hearing court determined, and our independent review confirms, that the requisition papers were in order. As those papers aver that appellants were present in the demanding state when the alleged crime occurred, their failure to offer any evidence refuting these allegations constrains us to accept them as true. *Commonwealth ex rel. Reis v. Aytch, supra.*

Next, it appears clear that appellants were adequately identified as those individuals named in the warrant. Mr. Cannataro identified the photographs of each appellant as his attacker, provided a description of each, and identified each by name. On the day of the attack he further identified each appellant after they were brought to the Philadelphia Police Department Major Crimes Unit following their apprehension by Detective O'Shea. At the extradition hearing, the latter testified that appellants were indeed those people he had arrested on February 1, 1977. Moreover, the pictures attached to the affidavit bore the names of appellants. Appellants at no time contested the fact that the photographs included in the requisition documents were those of appellants, and while a witness did not specifically testify that the photographs did indeed resemble appellants, in ordering extradition Judge Blake obviously determined that they did in fact identify the relators. As we stated in *Commonwealth v. Rowe, supra,* 264 Pa.Super. at 72–73, 398 A.2d at 1063:

> "While [appellants' identification] may not be clear beyond a reasonable doubt, we are not bound by that weighty standard. It must be constantly recalled that we are not dealing with the ultimate matter of guilt or innocence. Appellants will have ample opportunity to attack the testimony of the witnesses in more detail, and

with the benefit of a more stringent standard of proof, at trial."

The orders of the court of common pleas are therefore affirmed.